ROSA PRENDERGAST v. J. S. PRENDERGAST.

(Filed 4 December, 1907).

1. **Divorce, Absolute, from Husband—"Fornication and Adultery."**
Under The Code of 1883, sec. 1285, as amended by chapter 499, Laws of 1905, an absolute divorce shall only be granted to the wife when the husband commits fornication and adultery, or when such misconduct of the husband has been habitual. ·

2. **Same — Statute — Interpretation — "Fornication and Adultery"— "Adultery."**
The legislative intent of chapter 499, Laws of 1905, amending The Code of 1883, sec. 1285, was to draw a distinction between the grounds of absolute divorce given for acts of the husband and those of the wife—i. e., (a) if the husband shall commit fornication and adultery, and (b) if the wife shall commit adultery, making only one act sufficient as to the wife.

ACTION for divorce a vinculo, tried before Councill, J., and a jury, at September Term, 1907, of the Superior Court of ALAMANCE County.

Plaintiff alleged and offered evidence tending to prove one act of illicit intercourse on the part of the husband, defendant. Without evidence ultra, the trial Judge thereupon intimated that he would charge the jury that in no aspect of the evidence was the plaintiff entitled to the relief prayed for, in that the laws of North Carolina did not allow a dissolution of the bonds of matrimony for one act of adultery on the part of the husband. Thereupon, plaintiff, having excepted, submitted to a nonsuit and appealed.

146—15

*Parker & Parker* for plaintiff.

Defendant not represented in this Court.

HOKE, J., after stating the case: Under The Code of 1883, sec. 1285, and for years prior thereto, the causes for absolute divorce in this State were as follows: (1) If either party shall separate from the other and live in adultery. (2) If the wife shall commit adultery. (3) If either party, at the time of the marriage, was and still is naturally impotent. (4) If the wife, at the time of the marriage, be pregnant and the husband be ignorant of the fact of such pregnancy and be not the father of the child with which the wife was pregnant at the time of the marriage. By chapter 499, Laws of 1905, the first clause of the foregoing section was stricken out and there were substituted the words "If the husband shall commit fornication and adultery," making that part of the law, in effect, as follows: That an absolute divorce shall be granted, (*a*) if the husband shall commit fornication and adultery, and (*b*) if the wife shall commit adultery.

To adopt the position contended for by the plaintiff would require that these terms should have one and the same meaning, whereas the marked difference in the two clauses, standing as they do in such close juxtaposition, gives clear indication that the Legislature intended to make a distinction between the man and the woman in this feature of our laws of divorce, and we are of opinion that, in allowing a divorce when the man shall "commit fornication and adultery," it was intended to give those terms the distinctive meaning acquired by the words when associated together and as contained in section 3350 of the Revisal, defining the crime of "fornication and adultery." The uniform construction put upon this statute has established that, to constitute fornication and adultery, the misconduct must be habitual, and the General Assembly was no doubt advertent to this construction in making the amendment referred to.

There are grave reasons for the distinction made by this legislation, which the General Assembly evidently regarded as controlling, but, being matters more properly for legislative consideration, they are not specified or dwelt upon here, and are only referred to in a general way in support of the construction we have given the statute. It is argued that this interpretation would leave the amendment without any force or effect on the law as it formerly stood, but a reference to the statute will readily indicate the change that was made and intended. Formerly, in order to obtain a divorce for such misconduct on the part of the husband, it was required that he should withdraw from his household and live in adultery, or force the wife to leave him, while this is now no longer required.

We think his Honor correctly interpreted the amendment, and there is no error in his decision.

Affirmed.

BROWN, J., concurring in result: I concur in the opinion of the Court construing the act of 1905. It is evident that when the General Assembly of 1905 enacted the divorce law of that session it had in mind the indictable offense of fornication and adultery, and intended that the offense of the husband must amount to that in frequency before the wife could secure a divorce, but that one act of adultery is sufficient to justify the husband in putting away the wife. But, with entire deference, I cannot concur in the suggestion of the Court that there are "grave reasons for the distinction made by this legislation." On the contrary, I feel that such legislative discrimination against the wife and in favor of the husband is inherently and morally wrong, and unjust to the wives and mothers of our State. The result, as the law now stands, is, that if the husband be endowed with the powers which Gibbon ascribes to Mahomet, he may with impunity have intercourse with thirty different prostitutes in one night,

PRENDERGAST *v.* PRENDERGAST.

and the unfortunate wife must hang her helpless head in shame and bear her humiliation as best she can; while if the husband shall confine his attentions to one "soiled dove" for a few times only, the law will avenge the wrong done the outraged wife by divorcing her from her unfaithful spouse. On the contrary, let the wife step aside but once from the path of virtue, and the strong arm of the law will turn her out of her husband's house to starve, and free him forever from her degrading company, if he so wills. "Grave and weighty reasons" for such a discrimination against the pure women of this State do not readily suggest themselves to me. On the contrary, it appears to me that every consideration of justice and right demands that the husband should be held to as strict a moral accountability as the wife. Reasons for such discrimination do not seem to have suggested themselves to legislators in other States. One act of adultery on the part of either party to the marriage is ground for absolute divorce in every State of this Union except North Carolina, Kentucky and Texas (9 Am. and Eng. Enc., p. 746), and no injurious results have followed in those States which have repudiated the fallacy that public policy requires such a discrimination between husband and wife. Our law is more unjust than the ancient common law of our English ancestors in its treatment of women in this respect. In those days, if either party committed adultery it was ground for divorce from bed and board, but not *a vinculo matrimonii*, for the reason that, if absolute divorce were allowed to depend upon a matter within the power of either of the parties, it would probably be extremely frequent. 1 Blackstone, p. 441. Under our law, the wife is not even justified in leaving the husband for one act of infidelity, and if her outraged feelings force her to do so, the husband need not support her. The fear that the husband will commit one act of adultery in order to enable his wife to procure a divorce is absolutely groundless, as is shown by the experience of those States which have

done equal and exact justice in this matter, and where divorces are no more frequent than in this State and her two sister Commonwealths. The truth is, that a husband who will openly commit one act of adultery to make evidence against himself will commit as many such acts as are necessary to accomplish his purpose. In the ancient days of feudalism the adulterous wife frequently suffered death, not so much because of any moral delinquency on her part as because the blood of the heir might become tainted. We have no primogeniture now, and the husband can devise his lands away from his "tainted heir" if he so wills. This reason, if ever valid, is now worthless, since we are considering only the rights of the wife against the husband, and not of the husband against the wife. The law should not be relaxed in favor of the wife, but made stricter in regard to the husband, so as to hold both to the same standard of conjugal loyalty to each other and require both to obey the commandment of God.

It is to be hoped that some future General Assembly will abolish this unjust discrimination and follow the example of the forty-three States of this Union in dealing impartially between those who plight their mutual faith at the altar.