JOHN PETE FEDORONKO AND JERRY FEDORONKO, JR., CO-EXECUTORS OF THE ESTATE OF ELSIE PETERSON FEDORONKO HARDWICK v. AMERICAN DEFENDER LIFE INSURANCE COMPANY AND FIRST CITIZENS BANK AND TRUST COMPANY

No. 835SC1009

(Filed 17 July 1984)

1. Insurance § 37.2— life insurance—suicide—sufficiency of evidence

In an action to recover the proceeds of insurance policies which defendant refused to pay on the ground that insured had committed suicide within one year of issuance of the policies, the trial court did not err in denying defendant's motions for directed verdict and judgment n.o.v., since plaintiffs denied that insured had committed suicide; the controlling evidence was largely oral testimony and circumstantial, not documentary, evidence; the position of insured's body, and the neatly folded blanket on top, were unusual for a suicide; there was no evidence that a pistol found in the room with insured was the weapon that killed her; the medical examiner believed homicide was a possible cause of death; although no charges were brought, the sheriff continued to investigate the death as a homicide for over two years; no suicide note was found; the insured's children testified that she was in good spirits when they visited her a few days before her death; and the insured's husband claimed his Fifth Amendment privilege against self-incrimination in response to questions about whether he killed his wife.

2. Constitutional Law § 74; Evidence § 34.1— silence of witness—basis for inference by factfinder

A witness's silence can provide the basis for an inference by the factfinder, even though it cannot be used as evidence from which to find him guilty.

3. Insurance § 27.1; Attorneys § 7— credit life insurance—rate of interest on proceeds held by insurer—attorney fees

Where plaintiffs' action to recover on two credit life insurance policies was determined in their favor, the trial court did not err in declining to award plaintiffs attorney fees, since no statute authorized such an award; however, the trial court did err in awarding interest of 8% pursuant to G.S. 24-1, since the rate of interest was controlled by G.S. 58-205.3(a) and should have been "not less than the then current rate of interest on death proceeds left on deposit with the insurer."

APPEAL by plaintiffs and defendant American Defender Life Insurance Company (hereinafter defendant) from Brown, Judge. Judgment entered 11 March 1983 in Superior Court, PENDER County. Heard in the Court of Appeals 7 June 1984.

Plaintiffs sued defendant to recover the proceeds of two credit life insurance policies. Defendant had issued the policies to insure plaintiffs' testate, but had refused to pay the proceeds when she died. Defendant claimed the insured had committed suicide within one year of issuance of the policies, thereby barring payment of proceeds under the terms of the policies. The insured had acquired the credit life insurance policies to insure availability of funds with which to pay two loans made to her by the other defendant, First Citizens Bank and Trust Company.

First Citizens obtained a judgment for the full amount of both debts, plus fifteen percent interest from 9 July 1981 and attorney fees. Plaintiffs do not challenge on appeal the judgment in favor of First Citizens.

Upon a jury verdict that the insured did not commit suicide, the trial court also entered judgment in favor of plaintiffs and against defendant for the face amount of both credit life insurance policies, plus eight percent interest from 10 July 1981. Plaintiffs and defendant appeal from this judgment.

*Moore & Biberstein, by R. V. Biberstein, Jr., for plaintiffs.*

*Smith, Moore, Smith, Schell & Hunter, by Ted R. Reynolds and Maria J. Mangano, for defendant American Defender Life Insurance Company.*

WHICHARD, Judge.

DEFENDANT'S APPEAL

Defendant contends the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. The parties stipulated to plaintiffs' *prima facie* case; the issue thus became defendant's affirmative defense of suicide.

Defendant's motion for judgment notwithstanding the verdict must be judged by the same standard applicable to its motion for directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 584, 201 S.E. 2d 897, 902-03 (1974). Since defendant had the burden of proving suicide, its motion for directed verdict should have been granted only if the credibility of its evidence was manifest as a matter of law, and if the evidence so clearly established the fact of suicide that no reasonable inferences to the contrary could be drawn.

*North Carolina National Bank v. Burnette,* 297 N.C. 524, 536-37, 256 S.E. 2d 388, 395 (1979).

[1] The *Burnette* Court identified three recurrent situations where the credibility of a movant's evidence is manifest: (1) where the non-movant establishes the proponent's case by admitting the truth of the basic facts upon which the claim of the proponent rests; (2) where the controlling evidence is documentary and its authenticity is not challenged; and (3) where there are only latent doubts as to the credibility of oral testimony and the opposing party has not impeached or contradicted such testimony. *Id.* at 537-38, 256 S.E. 2d at 396. None of these situations appears in the case at bar. Plaintiffs did not admit that testator committed suicide, they denied it. The controlling evidence is largely oral testimony and circumstantial, not direct documentary evidence. Finally, the evidence is sufficiently contradictory to support an inference other than suicide. The position of the insured's body, and the neatly folded blanket on top, were unusual for a suicide. There was no evidence that a pistol found in the room with decedent was the weapon that killed her. The medical examiner believed homicide was a possible cause of death. Although no charges were brought, the sheriff continued to investigate the death as a homicide for over two years. No suicide note was found, and the insured's children testified that she was in good spirits when they visited a few days before her death.

[2] The insured's husband claimed his Fifth Amendment privilege against self-incrimination in response to questions about whether he killed his wife. His silence constituted some additional evidence counter to defendant's theory of suicide. While invocation of the Fifth Amendment may not be considered as evidence against the husband, the privilege is personal to him and is not available to defendant.

> The privilege of the witness is to prevent testimony which might be used against him in a subsequent criminal suit, and not to keep out probative evidence or any inferences to be drawn from the claim of privilege which might be relevant to the issues in the matter before the court. So, while the claim of privilege may not be used against defendant [or a witness] in a subsequent criminal prosecution, an inference that his testimony would have been unfavorable to him is available to

his opponent in a civil cause in which defendant [or a witness] pleads the privilege . . . .

98 C.J.S. *Witnesses* § 455, at 308 (1957) (footnotes omitted).

Our research has not disclosed any North Carolina cases deciding this question. A similar situation, however, was settled long ago. Where a witness refused to answer a question concerning a prior conviction, and had the right not to answer, the witness's silence could be brought to the attention of the jury in order to discredit him. *State v. Garrett*, 44 N.C. (Busb.) 357 (1853). The relevant principle to be derived is that a witness's silence can provide the basis for an inference by the factfinder, even though it cannot be used as evidence from which to find him guilty.

The aforementioned evidence for the plaintiffs tended to contradict defendant's evidence of suicide. Consequently, the trial court properly denied defendant's motions for directed verdict and judgment notwithstanding the verdict.

### PLAINTIFFS' APPEAL

[3] Plaintiffs contend the judgment should have included both a fifteen percent rate of interest from the date of the insured's death and attorney fees. They argue that the credit life insurance policies were intended to secure the insured's debt to First Citizens in the event of her death; that defendant's refusal to pay resulted in their being subjected to a fifteen percent interest rate and attorney fees in First Citizens' action on the debt; and that the attorney fees and fifteen percent interest rate were damages within the contemplation of the parties when the insurance contract was made, since defendant should have foreseen that they would result from its breach.

North Carolina long has held that a successful litigant may not recover attorney fees, whether as costs or as an item of damages, unless such a recovery is authorized expressly by statute. *Stillwell Enterprises, Inc. v. Interstate Equipment Co.*, 300 N.C. 286, 289, 266 S.E. 2d 812, 814 (1980). Plaintiffs have cited no statute that would allow them to recover attorney fees, and we know of none. The court thus correctly declined to award attorney fees to plaintiffs.

Plaintiffs' contentions regarding the rate of interest and the date from which it accrued are controlled by G.S. 58-205.3(a):

> Each insurer admitted to transact life insurance in this State which, without the written consent of the beneficiary, fails or refuses to pay the death proceeds or death benefits in accordance with the terms of any policy of life or accident insurance issued by it in this State within 30 days after receipt of satisfactory proof of loss because of the death, whether accidental or otherwise, of the insured shall pay interest, *at a rate not less than the then current rate of interest on death proceeds left on deposit with the insurer computed from the date of the insured's death*, on any moneys payable and unpaid after the expiration of such 30-day period.

(Emphasis supplied.) The trial court erroneously awarded the legal rate of interest of eight percent found in G.S. 24-1. The cause thus must be remanded for award of an interest rate "not less than the then current rate of interest on death proceeds left on deposit with the insurer." The interest must run from 15 May 1981, the date of the insured's death.

The result is:

In defendant's appeal, affirmed.

In plaintiffs' appeal, affirmed in part, reversed in part, and remanded.

Judges ARNOLD and EAGLES concur.