IN RE ESTATE OF TROGDON

[101 N.C. App. 323 (1991)]

---

IN THE MATTER OF THE ESTATE OF CALVIN LANCASTER TROGDON

No. 9021SC232

(Filed 15 January 1991)

**Executors and Administrators § 23 (NCI3d); Fornication and Adultery § 4 (NCI3d) — year's allowance — forfeiture for adultery — evidence of adultery insufficient**

The decision of the trial court finding that a wife was barred from receiving the surviving spouse's year's allowance under N.C.G.S. § 30-15 (1984) was reversed where, aside from extended cohabitation, there was no evidence of inclination to engage in adultery which could support an inference of adultery unless resort is made to the "suspicion and conjecture" which the Court of Appeals has attempted to avoid by its insistence on evidence of inclination as well as opportunity.

**Am Jur 2d, Descent and Distribution § 133.**

**Adultery on part of surviving spouse as affecting marital rights in deceased spouse's estate. 13 ALR3d 486.**

Judge COZORT dissenting.

IN RE ESTATE OF TROGDON

[101 N.C. App. 323 (1991)]

APPEAL by petitioner from judgment entered 19 January 1990 by *Judge Thomas W. Ross* in FORSYTH County Superior Court. Heard in the Court of Appeals 16 November 1990.

This case concerns the granting of a surviving spouse's year's allowance under G.S. § 30-15. Petitioner-appellant Patricia McNulty Trogdon, wife of Calvin Lancaster Trogdon, deceased, petitioned for a year's allowance following the death of her husband. The allowance was granted by Magistrate Vannoy. Respondent-appellee Bradley Floyd Trogdon, Administrator of the Estate of Calvin Lancaster Trogdon, appealed to the superior court. The matter was heard *de novo* by Judge Ross. From entry of judgment setting aside the assignment, petitioner appeals.

*Bailey and Thomas, by Wesley Bailey, David W. Bailey, Jr. and John R. Fonda, for petitioner-appellant.*

*Morrow, Alexander, Tash, Long & Black, by Clifton R. Long, Jr., for respondent-appellee.*

JOHNSON, Judge.

The testimony presented at the hearing tended to show the following facts. Appellant-wife and deceased were married for the second time on 14 June 1983 and remained lawfully married at the time of his death on 17 April 1988. Prior to this marriage, the husband was involved in a motorcycle accident which left him a quadriplegic. After the marriage, the wife and husband moved into a house which was built to accommodate the husband's physical condition. The wife left the marital home on 11 March 1985 and moved into the Village Apartments. At some time thereafter, Doug Winfrey moved into her apartment. Petitioner's son, the heir and administrator of the husband's estate, testified that petitioner told him she left the marital home because she just couldn't put up with it. He further testified to her saying that Doug Winfrey moved into her apartment because they couldn't see paying rent for two different apartments. Petitioner claimed her fifth amendment right and refused to answer any questions concerning the apartment. A private investigator testified that on 28 and 29 October 1987 he observed petitioner and Doug Winfrey remain together in the apartment during the night and leave together in the morning.

## IN RE ESTATE OF TROGDON

[101 N.C. App. 323 (1991)]

Judge Ross found from the evidence that petitioner was barred by G.S. § 31A-1(a)(2) from receiving a year's allowance in the personal property of her spouse.

The issue on appeal is whether the trial court erred in finding that the petitioner committed adultery and is therefore barred from receiving a year's allowance, when there was evidence of opportunity to commit adultery, in the form of an extended cohabitation, but no direct evidence of adultery and no other evidence of an inclination to commit adultery.

Specific acts which will bar surviving spouses, parents, slayers and others from exercising their rights in the property of the deceased are found in Chapter 15A of the N.C. General Statutes. As to spouses, every surviving spouse of an intestate or of a testator, whether or not he has dissented from the will, is entitled, out of the personal property of the deceased spouse, to an allowance of $5,000 for his support for one year after the death of the deceased spouse. G.S. § 30-15. However, a "spouse who voluntarily separates from the other spouse and lives in adultery and such has not been condoned" is barred from receiving the year's allowance. G.S. §§ 31A-1(a)(2), 31A-1(b)(4). Chapter 31A is to be construed broadly so as to effect the policy of this State that no person shall be allowed to profit by his own wrong. G.S. § 31A-15.

Adultery may be proved by direct evidence but for obvious reasons is usually proved by circumstantial evidence. *State v. Davenport*, 225 N.C. 13, 33 S.E.2d 136 (1945). North Carolina follows the majority rule that where proof of adultery is by circumstantial evidence there must be proof of both opportunity and inclination to commit adultery. 1 R. Lee, *N.C. Family Law* § 65 (4th ed. 1979 and Supp. 1989). *Wallace v. Wallace*, 70 N.C. App. 458, 319 S.E.2d 680 (1984), *disc. rev. denied*, 313 N.C. 336, 327 S.E.2d 900 (1985). In the most recent case to consider the issue it was explicitly held that in order to establish adultery, there must be evidence to show both opportunity and inclination to commit the act and that evidence of opportunity alone is not enough. *Id.* The *Wallace* Court specifically criticized a previous decision where it had held that circumstantial evidence of opportunity together with improper circumstances, but without evidence of inclination, was sufficient to go to the jury. *See Owens v. Owens*, 28 N.C. App. 713, 716, 222 S.E.2d 704, 706, *disc. rev. denied*, 290 N.C. 95, 225 S.E.2d 324 (1976) (where the court said: "In some cases evidence of oppor-

tunity and incriminating or improper circumstances, without evidence of inclination or adulterous disposition, may be such as to lead a just and reasonable man to the conclusion of adulterous intercourse."). In *Owens*, plaintiff husband presented evidence that the defendant wife was living with another man for two months, that each morning the man left the house about 8:00 a.m. and that the two of them were seen together buying clothes. The *Owens* Court found this evidence sufficient to take the case to the jury.

In *Horney v. Horney*, 56 N.C. App. 725, 289 S.E.2d 868 (1982), we again faced the question of the sufficiency of evidence and being "concerned that [the] lack of a clear standard has resulted in precisely that which this Court and our Supreme Court have repeatedly held to be impermissible — trial by 'suspicion and conjecture,'" we attempted to "draw a more definite line" between permissible inference and mere conjecture. *Id.* at 727, 289 S.E.2d at 869. In *Horney*, plaintiff's evidence tended to show that the defendant husband had a friendly relationship with another woman, that they were alone together on several occasions in the woman's office and on at least one occasion in her home, that she made phone calls to him when he was out of town on business, that the husband was often away from home on Saturday afternoons, and that during a reconciliation period the husband refused to sleep with the wife and was often away in the evenings. The *Horney* Court held that this was insufficient evidence to go to the jury but suggested in *dicta* that had there been evidence of other suspicious circumstances such as being together very late at night, in state of undress, or evidence of feelings of love or of affectionate behavior, the result would have been different.

In *Wallace*, this Court reviewed the *Owens* and *Horney* decisions and concluded:

> We are persuaded that the "more definite line" needed to be drawn in adultery cases is to require that in order to establish adultery, the evidence, whether circumstantial or direct, must tend to show both opportunity and inclination to engage in sexual intercourse and that when the evidence shows no more than an opportunity, an issue of adultery should not be submitted.

70 N.C. App. at 462, 319 S.E.2d at 683. In *Wallace*, the plaintiff's evidence showed that the defendant left a farmhouse with a woman not his wife at 10:30 in the morning, entered the same motel that

**IN RE ESTATE OF TROGDON**

[101 N.C. App. 323 (1991)]

the woman later entered, drove with her to the airport and to a restaurant, remained overnight in the same motel and remained overnight in his condominium with the woman. The Court held that this evidence supported only an inference that defendant had an opportunity to engage in adulterous conduct but did not allow a reasonable inference as to defendant's inclination to engage in adultery. Finding that the evidence failed to show an inclination, the Court held that the trial court erred in denying defendant's motion for a directed verdict.

In the case *sub judice*, plaintiff clearly presented sufficient evidence as to the opportunity prong of the test. However, there was no evidence of any inclination on the part of the wife to engage in an adulterous relationship with her "apartment-mate" aside from the extended cohabitation itself. Plaintiff's own evidence was that the spouse shared her apartment with Mr. Winfrey for economic reasons. Aside from the extended cohabitation, there was no evidence of inclination to engage in adultery which could support an inference of adultery unless resort is made to the "suspicion and conjecture" which this Court has attempted to avoid by its insistence on evidence of inclination as well as opportunity. *Wallace*, 70 N.C. App. 459, 319 S.E.2d 680.

We find that plaintiff's evidence on the issue of adultery must fail. The decision of the trial court finding the wife barred from receiving the year's allowance is

Reversed.

Judge WELLS concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

I disagree with the majority's holding that there was insufficient evidence to support the trial court's decision that the wife's adultery barred her from receiving a year's allowance.

The administrator's evidence showed that the wife left her husband in March of 1985. At some point during 1985, Doug "Cookie" Winfrey moved into an apartment with the wife. The wife admitted to her son that she and Mr. Winfrey were living together. The son testified that his mother and Mr. Winfrey were still living

together on the date of the hearing below, which was 1 December 1988. The decedent died on 17 April 1988. Thus, there was ample evidence that the wife was living in an apartment with another man for the last two to three years of her husband's life.

The wife was called by the administrator as an adverse witness. When she was asked whether someone moved into the apartment with her, and whether Doug Winfrey lived with her, she refused to answer on the grounds that she might incriminate herself. The wife's invocation of the Fifth Amendment to the United States Constitution can be used against her in a civil proceeding, and the finder of fact can use her refusal to answer to infer that the testimony would have been unfavorable to her. In *Fedoronko v. American Defender Life Ins. Co.*, our Court quoted with approval this language from C.J.S.:

> "[W]hile the claim of privilege may not be used against defendant [or a witness] in a subsequent criminal prosecution, an inference that his testimony would have been unfavorable to him is available to his opponent in a civil cause in which defendant [or a witness] pleads the privilege. . . ."

69 N.C. App. 655, 657-58, 318 S.E.2d 244, 246 (1984) (quoting 98 C.J.S. *Witnesses* § 455, at 308 (1957) ). The Court summarized the rule as follows:

> The relevant principle to be derived is that a witness's silence can provide the basis for an inference by the factfinder, even though it cannot be used as evidence from which to find him guilty.

*Id.* at 658, 318 S.E.2d at 246.

When the wife refuses to answer questions about her living arrangements, on the grounds that it may tend to incriminate her, in the face of evidence that she has been living with a man not her husband for two to three years, there is sufficient evidence for the trial court to infer that she has committed adultery. To hold otherwise defies common sense in favor of a hypertechnical legal principle.

I vote to affirm the trial court.