IN THE MATTER OF THE ESTATE OF CALVIN LANCASTER TROGDON

No. 77A91

(Filed 7 November 1991)

**1. Trial § 58.3 (NCI3d)— nonjury trial—conclusiveness of findings**

Where trial is by judge and not by jury, the trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected, and findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts.

**Am Jur 2d, Appeal and Error § 839.**

**2. Executors and Administrators § 23 (NCI3d); Fornication and Adultery § 4 (NCI3d)— year's allowance—forfeiture for adultery—sufficient evidence of adultery**

There was sufficient evidence of opportunity and inclination to support the trial court's finding that respondent wife committed uncondoned adultery and is therefore barred from receiving a year's allowance pursuant to N.C.G.S. § 31A-1(a)(2) and (b)(4) where evidence was presented that respondent and decedent were married for a second time after decedent was severely injured in a motorcycle accident which left him a quadriplegic; despite decedent's medical condition, respondent voluntarily left the marital home and moved into an apartment; prior to leaving, respondent had started coming in at night later and later and gradually began remaining away from home for days at a time; while still married to decedent, respondent began living with another man; respondent told her son that she and the other man "couldn't see paying rent for two different apartments" and admitted that they were "living together"; respondent's cohabitation with the other man began at least two years prior to the husband's death and continued until the date of the hearing; respondent filed for an absolute divorce from decedent during this cohabitation; respondent invoked her fifth amendment privilege against self-incrimination when questioned about her relationship with the other man;

IN RE ESTATE OF TROGDON

[330 N.C. 143 (1991)]

and respondent never refuted the serious allegation of adultery lodged against her.

**Am Jur 2d, Descent and Distribution §§ 129, 133.**

**Adultery on part of surviving spouse as affecting marital rights in deceased spouse's estate. 13 ALR3d 486.**

3. **Evidence § 34.1 (NCI3d) — assertion of self-incrimination right — basis for inference by factfinder**

The factfinder in a civil action may use a witness's invocation of his fifth amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him.

**Am Jur 2d, Witnesses § 37.**

APPEAL by the Administrator of the Estate of Calvin Lancaster Trogdon pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 101 N.C. App. 323, 399 S.E.2d 396 (1991), reversing a judgment entered 19 January 1990 by *Ross, J.*, in Superior Court, FORSYTH County. Heard in the Supreme Court 10 September 1991.

*Morrow, Alexander, Tash, Long & Black, by C. R. Long, Jr., for petitioner-appellant.*

*Bailey & Thomas, by Wesley Bailey, David W. Bailey, Jr., and John R. Fonda, for respondent-appellee.*

FRYE, Justice.

At issue in this case is whether there was sufficient evidence to support the trial court's finding that respondent-wife, Patricia McNulty Trogdon, committed adultery and is therefore barred from receiving a year's allowance pursuant to N.C.G.S. § 31A-1(a)(2). The evidence showed, *inter alia*, that respondent cohabited with a male for approximately three years and invoked her fifth amendment privilege against self-incrimination when questioned about the relationship with the cohabitant. The trial judge agreed with petitioner, Bradley Floyd Trogdon, the decedent's and respondent's son and the administrator of the estate, and found that the evidence supported a finding of adultery on the part of respondent. On respondent's appeal, the Court of Appeals reversed, holding that, while petitioner presented sufficient evidence to show opportunity

to commit adultery, petitioner failed to show inclination to commit adultery. We agree with the trial judge, however, and reverse the decision of the Court of Appeals.

The case arose in the following context:

Calvin Lancaster Trogdon died intestate on 17 April 1988. Bradley Floyd Trogdon, his son, qualified as administrator of his estate on 29 September 1988. Decedent's widow, Patricia McNulty Trogdon, applied for a spouse's year's allowance pursuant to N.C.G.S. § 30-15, which was allowed by the magistrate. Bradley Trogdon, as son and heir, appealed to the superior court pursuant to N.C.G.S. § 30-23, on the grounds that Mrs. Trogdon had forfeited her right to share in the property of her deceased husband. Following a hearing held on 1 December 1988, Judge Thomas W. Ross made findings of fact and conclusions of law and ordered that the assignment of the year's allowance be set aside. On Mrs. Trogdon's appeal, a divided panel of the Court of Appeals reversed. Bradley Trogdon appealed to this Court on the basis of the dissenting opinion.

I.

At the outset, we emphasize that we do not attempt to establish a brightline test for determining how much evidence is necessary to permit a jury or trial judge to infer adultery. We recognize that while a measure of certainty is required for guidance in deciding future cases of this genre, each of these cases will demand a fact-specific inquiry. It is precisely because of the uniqueness of each case that we specifically limit our holding to the facts of the case before us.

The testimony presented at trial tended to show the following undisputed facts. Patricia Trogdon and Calvin Trogdon were married for the second time on 14 June 1983. Prior to the marriage, Mr. Trogdon was severely injured in a motorcycle accident which left him a quadriplegic. After the marriage, the Trogdons moved into a home which was built to accommodate Mr. Trogdon's medical condition. Mrs. Trogdon left the marital home on 11 March 1985 and moved into an apartment in the Village Apartments. Prior to leaving the marital home, Mrs. Trogdon started coming in at night later and later and gradually began remaining away from home for days at a time. Shortly after the separation, Doug "Cookie" Winfrey, who lived in an apartment in the same complex, moved into the apartment with Mrs. Trogdon because, according to Mrs.

IN RE ESTATE OF TROGDON

[330 N.C. 143 (1991)]

Trogdon, "[they] couldn't see paying rent for two different apartments." When called as an adverse witness to testify about this living arrangement, Mrs. Trogdon invoked her fifth amendment privilege against self-incrimination.

Mrs. Trogdon's son, Bradley, would occasionally visit his mother while she lived in the apartment with Mr. Winfrey. On one occasion, Mrs. Trogdon admitted to her son that she and Winfrey were "living together." A private detective testified that on 28 and 29 October 1987, he observed Mrs. Trogdon and Mr. Winfrey remain in the apartment throughout the night. On the morning of 28 October, Mr. Winfrey exited the apartment, started Mrs. Trogdon's car for her and then returned to the apartment. On the morning of 29 October, Mr. Winfrey and Mrs. Trogdon left the apartment together. Mrs. Trogdon filed an action for absolute divorce on 30 September 1987, and Mr. Trogdon filed an action for alimony on 2 November 1987. Mr. Trogdon died on 17 April 1988, prior to any judgment being entered in the divorce and alimony proceedings.

II.

N.C.G.S. § 31A-1 provides in pertinent part:

§ 31A-1. Acts barring rights of spouse.

(a) The following persons shall lose the rights specified in subsection (b) of this section:

. . . .

(2) A spouse who voluntarily separates from the other spouse and lives in adultery and such has not been condoned; or

(3) A spouse who wilfully and without just cause abandons and refuses to live with the other spouse and is not living with the other spouse at the time of such spouse's death; . . .

. . . .

(b) The rights lost as specified in subsection (a) of this section shall be as follows:

. . . .

(4) All rights to any year's allowance in the personal property of the other spouse . . . .

IN RE ESTATE OF TROGDON

[330 N.C. 143 (1991)]

N.C.G.S. § 31A-1 (1984). Section 31A-15 provides that "Chapter [31A is] to be broadly construed" so "that no person shall be allowed to profit by his [or her] own wrong."

We hold that respondent is barred from a year's allowance pursuant to subsections (a)(2) and (b)(4) of N.C.G.S. § 31A-1.

In the case *sub judice*, the trial judge made the following significant findings of fact:

(4) The Court finds from the evidence presented that Patricia McNulty Trogdon has committed the following acts as specified in N.C.G.S. 31A-1(a), to wit: A spouse who voluntarily separates from the other spouse and lives in adultery and such has not been condoned; that the evidence did show that Patricia McNulty Trogdon and Calvin Lancaster Trogdon were lawfully married on or about the 14th day of June, 1983; that Patricia McNulty Trogdon did voluntarily separate from Calvin Lancaster Trogdon on or about the 11th day of March, 1985 and lived continuously separate and apart from the said Calvin Lancaster Trogdon until his death; that during the separation of the parties, Patricia McNulty Trogdon did reside and commit adultery with one Doug Winfrey a/k/a "Cookie"; and that said separation and adultery was [sic] not condoned by Calvin Lancaster Trogdon.

Based upon these and other findings, the trial judge concluded as a matter of law that Mrs. Trogdon "is barred by grounds pursuant to N.C.G.S. § 31A-1(a) and shall lose the right . . . to any year's allowance in the personal property of the decedent."

The Court of Appeals reversed the trial court on the basis that, aside from the extended cohabitation, there was no evidence of inclination to engage in adultery which could support an inference of adultery unless resort is made to suspicion and conjecture. *In re Estate of Trogdon*, 101 N.C. App. 323, 327, 399 S.E.2d 396, 398 (1991). We believe the Court of Appeals erred in reaching this conclusion.

[1]  Where trial is by judge and not by jury, the trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, *even though the evidence might sustain findings to the contrary. Kirby Building Systems v. McNiel*, 327 N.C. 234, 242, 393 S.E.2d 827, 832 (1990) (citing *Williams v. Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975)). The trial judge acts as both judge and

jury and considers and weighs all the *competent* evidence before him. *Williams v. Ins. Co.*, 288 N.C. at 342, 218 S.E.2d at 371. If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected. *Id.* Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts. *Id.* The logic behind this approach is clear. In this setting, the trial judge is better able than we at the appellate level to gauge the comportment of the parties throughout trial and to discern the sincerity of their responses to difficult questions. We believe this approach to be especially applicable to a case like this one in which a party, whose credibility is at issue, took the stand and refused to testify about an alleged adulterous relationship.

The evidence in this case clearly supports an inference of adultery as found by the trial court. Although contrary inferences might be drawn from the same evidence, we believe that this finding should be accorded a high degree of deference.

Adultery is nearly always proved by circumstantial evidence. 1 Robert E. Lee, *North Carolina Family Law* § 65 (4th ed. 1979). Circumstantial evidence "is often the only kind of evidence available, as misconduct of this sort is usually clandestine and secret." *Id.* Where adultery is sought to be proved by circumstantial evidence, resort to the opportunity and inclination doctrine is usually made. *Id.* Under this doctrine, adultery is presumed if the following can be shown: (1) the adulterous disposition, or inclination, of the parties; and (2) the opportunity created to satisfy their mutual adulterous inclinations. *Id.*

In *Owens v. Owens*, 28 N.C. App. 713, 222 S.E.2d 704, *disc. rev. denied*, 290 N.C. 95, 225 S.E.2d 324 (1976), the North Carolina Court of Appeals warned against adopting broad rules to prove adultery. The court said:

> We consider it unwise to adopt general rules as to what will or will not constitute proof of adultery, but the determination must be made with reference to the facts of each case. In some cases evidence of opportunity and incriminating or improper circumstances,[1] without evidence of inclination or

---

1. The court in *Owens* cited Corpus Juris Secundum and American Jurisprudence for the following:

IN RE ESTATE OF TROGDON

[330 N.C. 143 (1991)]

adulterous disposition, may be such as to lead a just and reasonable [person] to the conclusion of adulterous intercourse.

*Id.* at 716, 222 S.E.2d at 706 (footnote added). In *Owens*, the plaintiff husband presented evidence that the defendant wife had been living with another man for two months, that each morning the man left the house about 8:00 a.m. and that the two of them had been seen buying clothes together. The Court of Appeals found this evidence sufficient to take the case to the jury on the issue of adultery.

In *Horney v. Horney*, 56 N.C. App. 725, 289 S.E.2d 868 (1982), the Court of Appeals expressed disapprobation for the holding in *Owens*. The court observed that there was no clear standard for determining the sufficiency of proof of adultery, and expressed concern that the absence of such a standard had resulted in "trial by suspicion and conjecture." *Id.* at 727, 289 S.E.2d at 869. The court criticized *Owens* as standing for the proposition that "opportunity alone may now be sufficient to support a jury verdict of adultery if the opportunity is great enough." *Id.* The court felt that "a more definite line must be drawn between permissible inference and mere conjecture." *Id.* Importantly, however, no such line was explicitly drawn in *Horney*. The relevant facts of *Horney* were that the defendant husband had a friendly relationship with another woman, that they were alone together on several occasions in the woman's office and on at least one occasion in her home, that she made phone calls to him when he was out of town on business, that the husband was often away from home on Saturday afternoons, and that during a period of reconciliation the husband refused to sleep with the wife and was often away in the evenings. The court found this evidence insufficient to go to the jury on the question of adultery. *Id.* at 728, 289 S.E.2d at 869. However, the court suggested in *dicta* that it might have reached a different result had there been evidence of other suspicious circumstances such as being together very late at night in state of undress, or

---

Both 27A C.J.S., Divorce, § 139(2)b and 24 Am. Jur. 2d, Divorce and Separation, § 369 substitute "adulterous disposition" for "inclination." In 27A C.J.S., *supra*, at 480, it is stated: "In absence of evidence of an adulterous inclination, proof of opportunity to commit adultery is not sufficient to establish the offense, *unless it occurs under incriminating circumstances.*"

*Owens*, 28 N.C. App. at 715, 222 S.E.2d at 705 (alteration in original).

evidence of feelings of love or affectionate behavior. *Id.* at 727, 289 S.E.2d at 869.

One of the more recent cases discussing this issue is *Wallace v. Wallace*, 70 N.C. App. 458, 319 S.E.2d 680 (1984), *disc. rev. denied*, 313 N.C. 336, 327 S.E.2d 900 (1985). In considering both *Owens* and *Horney*, the court in *Wallace* said that its comments in *Horney* concerning *Owens* "can only be regarded as placing *Owens* in the trial by 'suspicion and conjecture' category." *Id.* at 461, 319 S.E.2d at 82. The court observed further that the *dicta* in *Horney* still leaves far too much to conjecture. The court said:

> We cannot agree that in modern society, where adult persons follow widely diverse schedules of work and other activities throughout the day and night, that being alone together late at night is any more or less significant than being alone together at any other time . . . . We are persuaded that the "more definite line" needed to be drawn in adultery cases is to require that in order to establish adultery, the evidence, whether circumstantial or direct, must tend to show both opportunity and inclination to engage in sexual intercourse and that when the evidence shows no more than an opportunity, an issue of adultery should not be submitted.

*Id.* at 461-62, 319 S.E.2d at 683.

In *Wallace*, the plaintiff's evidence tended to show that the defendant left a farmhouse with a woman not his wife at 10:30 in the morning, entered the same motel that the woman later entered, drove with her to the airport and to a restaurant, remained overnight in the same motel and remained overnight in his condominium with the woman. The court held that this evidence supported an inference of opportunity but not inclination to engage in adulterous conduct.

In reviewing these cases, it becomes readily apparent that the general principles set forth in them regarding what will or will not constitute proof of adultery are conflicting and unsatisfactory. We believe this to be inevitable, however, given the fact-specific nature of these types of cases. In comparing the Court of Appeals decisions in *Owens*, *Horney*, and *Wallace*, we note that the language used by the court must be considered in light of the facts of each case. In *Owens*, there was clear evidence that the parties had lived together for two months. The evidence was

## IN RE ESTATE OF TROGDON

[330 N.C. 143 (1991)]

held sufficient to go to the jury. In *Horney* and *Wallace*, on the other hand, there was no evidence of living together or cohabitation — only suspicion and conjecture. In those cases the Court of Appeals found the evidence insufficient to go to the jury.

[2] We are satisfied that the evidence in the case *sub judice* amounts to more than suspicion and conjecture. While we expressly do not presume every male-female living together situation to be amorous, that fact, combined with several other factors in this case, permits a reasonable inference of adultery. As the Court of Appeals concluded, petitioner clearly presented sufficient evidence as to the opportunity prong of the test. Unlike the Court of Appeals, however, we believe that the evidence satisfies the inclination prong as well.

During the course of her second marriage to the decedent and despite his medical condition, which was known to respondent at the time of remarriage, Mrs. Trogdon voluntarily left the marital home and moved into the same apartment complex in which Cookie Winfrey lived. Petitioner's unrefuted evidence was that, prior to leaving, Mrs. Trogdon had started coming in at night later and later and gradually began remaining away from home for days at a time. While still married to decedent, Mrs. Trogdon began living with Cookie Winfrey. In explaining this living situation to her son, Mrs. Trogdon said that "[they] couldn't see paying rent for two different apartments." On one occasion, Mrs. Trogdon admitted that she and Winfrey were "living together." Much longer than the cohabitation in *Owens*, the cohabitation in the instant case was ongoing and lasted at least two years prior to the husband's death and continued until the date of the hearing. It was during this cohabitation that Mrs. Trogdon filed for absolute divorce from her husband. A few months later, while Mrs. Trogdon was still living with Mr. Winfrey, Mr. Trogdon died. Certainly, a reasonable person could construe these incriminating circumstances, in the context of this case, as showing an adulterous disposition on the part of Mrs. Trogdon.

[3] Perhaps the most telling evidence of inclination was spoken from the mouth of Mrs. Trogdon herself. When asked more than once about her relationship with Winfrey, Mrs. Trogdon responded, "No, I really refuse to answer on the grounds that I may incriminate myself." As Judge Whichard (now Justice) noted in *Federonko v. American Defender Life Ins. Co.*, 69 N.C. App. 655, 657-58, 318

S.E.2d 244, 246 (1984), the finder of fact in a civil cause may use a witness' invocation of his fifth amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him. *Id.* at 657-58, 318 S.E.2d at 246. Moreover, the Court of Appeals pointed out the following in *Gray v. Hoover*, 94 N.C. App. 724, 381 S.E.2d 472, *disc. rev. denied*, 325 N.C. 545, 385 S.E.2d 498 (1989):

> "Plaintiff's charge against defendant was adultery; if the evidence of so serious a charge was not true, the defendant had the opportunity to refute it. Whether the charge was true or not, the falsity of it was peculiarly within defendant's knowledge. The fact that [she] did not refute the damaging charge made by plaintiff, it may be that this was a silent admission of the charge made against [her]."

*Id.* at 729, 381 S.E.2d at 475 (quoting *Walker v. Walker*, 201 N.C. 183, 184, 159 S.E. 363, 364 (1931)). In the instant case, respondent never refuted the serious allegation of adultery lodged against her. Under the propositions stated above, her refusal to testify about the nature of her relationship with Cookie Winfrey and her failure to refute the charge of adultery logically give rise to an inference of adultery.

In weighing the evidence before him, the trial judge resolved the inferences in favor of the administrator and against the respondent, finding that she had committed adultery which had not been condoned by her husband. While contrary inferences might have been drawn from this same evidence, it was the trial judge's prerogative to determine which inferences should be drawn and which inferences should not be. *Williams v. Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371. His finding, which is supported by the evidence, is binding upon this Court. *Id.*

### III.

In conclusion, we hold that the evidence supports the trial court's finding that Mrs. Trogdon voluntarily separated from her husband and lived in an uncondoned adulterous relationship with Cookie Winfrey. Therefore, the trial court properly set aside the year's allowance assigned to her from her deceased husband's estate pursuant to N.C.G.S. § 31A-1. This holding is in accord with section 31A-15 which provides that Chapter 31A "shall be construed broadly in order to effect the policy of this State that no person shall

be allowed to profit by his [or her] own wrong." N.C.G.S. § 31A-15 (1984). "To hold otherwise defies common sense in favor of a hypertechnical legal principle." *In re Estate of Trogdon,* 101 N.C. App. at 328, 399 S.E.2d at 399 (Cozort, J., dissenting).

For the reasons stated above, the decision of the Court of Appeals is reversed.

Reversed.