In the Matter of the Estate of MICHAEL ALLEN MONTGOMERY

No. COA99-681

(Filed 18 April 2000)

**1. Estate Administration— letters of administration—petition to revoke—living in adultery—definition**

The phrase "living in adultery" in N.C.G.S. § 31A-1(a)(2) is construed to mean that a spouse engages in repeated acts of adultery within a reasonable period of time preceding decedent's death.

**2. Estate Administration— letters of administration—petition to revoke—living in adultery—insufficient evidence**

The trial court did not err by granting summary judgment for respondent on a petition to revoke her letters of administration for her husband's estate on allegations that she was living in adultery under N.C.G.S. § 31A-1(a)(2), but the evidence at best merely shows that respondent kissed a man in a bar, kissed that same man in a house, lay "all over" him on a couch with other people present, and talked with him several times on the telephone.

Appeal by petitioners from order filed 17 February 1999 by Judge Henry E. Frye, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 14 March 2000.

IN RE ESTATE OF MONTGOMERY

[137 N.C. App. 564 (2000)]

*Peebles & Schramm, by John J. Schramm, Jr. and Erin L. Williams, for petitioner-appellants.*

*Kenneth Clayton Dawson, for respondent-appellee.*

GREENE, Judge.

Charles Allen Montgomery and Janice S. Montgomery (collectively, Petitioners) appeal an order filed 17 February 1999 granting a motion by Karen Montgomery (Respondent) for summary judgment.

The record shows that Michael Allen Montgomery (Decedent) and Respondent were married on 2 November 1995, and one child was born to the marriage. The parties separated sometime prior to 20 June 1998. Decedent died on 20 June 1998, and on 30 June 1998 the Clerk of the Superior Court of Forsyth County issued Respondent Letters of Administration to administer Decedent's estate pursuant to N.C. Gen. Stat. § 28A-6-1.

On 25 August 1998, Petitioners filed a Petition for Revocation of Letters of Administration Issued to Respondent (the Petition) pursuant to N.C. Gen. Stat. § 28A-9-1(a)(1). The Petition alleged that in February of 1998 Respondent "willfully and without just cause abandoned [Decedent] and refused to live with him, and was not living with him at the time of his death." The Petition also alleged that at the time of Decedent's death Respondent was "living in adultery not condoned by [Decedent]."

On 4 December 1998, Respondent filed a Response to Petition for Revocation of Letters of Administration Issued to Respondent (the Response). Respondent admitted in the Response that she and Decedent "were living separate and apart at the time of [Decedent's] death," and denied Petitioners' allegation she was "living in adultery" at the time of Decedent's death. The Response contained a motion to dismiss the Petition on the ground Petitioners lacked standing to bring an action for revocation of Letters of Administration, and a motion for summary judgment on the ground no genuine issue of material fact existed.

On 4 December 1998, Respondent filed an affidavit with the trial court stating she "did not abandon [her] husband, commit adultery, or live in adultery." In an affidavit filed with the trial court on 4 December 1998, Respondent's landlord stated the terms of Respondent's lease restricted occupancy of Respondent's mobile

home, and Respondent was not permitted to occupy the mobile home with "a man to whom she was not married." The affidavit also stated the landlord "received no complaints from any neighbors of any improper occupancy of [Respondent's mobile home, and the land-lord] frequently travel[ed] by the property and never saw any vehicles which did not belong there." Finally, in a 4 December 1998 affidavit, Cynthia Diane Martin, a "close friend[]" of Respondent, stated Respondent "had no other romantic interests, and . . . was not involved in any sexual relationships with anyone else."

The record also contains affidavits in support of the Petition, sub-mitted to the trial court by Brian Amen (Amen), Ben Blevins (Blevins), and Mandy Stewart (Stewart). Amen's affidavit, executed on 16 December 1998, stated he "was a close personal friend to [Decedent]," and he had "personal knowledge the [Respondent] was having an affair . . . during the course of her marriage." Amen made the following statements · in his affidavit: "I have observed [Respondent] kissing, hugging, and dancing with Matthew Davis at the Country Corral Dance Club and Bar in February of 1998 when she was married to [Decedent]"; and "I have observed [Respondent] and Matthew Davis kissing, hugging and laying all over each other on a couch in February of 1998 at my home where they stayed until approximately 4:30 to 5:00 a.m." Blevins' affidavit, executed 16 December 1998, stated Blevins is an acquaintance of Respondent, and Respondent had, on several occasions, called Blevins' house and asked Blevins and his wife to "cover for her and call her in the event [Decedent] called [Blevins'] house looking for her . . . [because] she had told [Decedent] she was staying with [Blevins] when in fact she was going to see Matthew Davis." Blevins' affidavit also stated that "[i]n approximately February of 1998 [Blevins] spoke with [Respondent] several times in which she asked [Blevins] to call her back at her house . . . so that if [Decedent] tried to dial *69 it would trace back to [Blevins'] phone and not to the phone of Matthew Davis." Finally, Stewart's affidavit, executed on 15 December 1998, stated that "[f]rom November of 1997 through February of 1998 on approximately 8 occasions [Respondent] has called me asking me to call her back . . . [and] it is clear to me that her reasons for asking me to call her back were to avoid [Decedent's] attempts to conduct a *69 call search."

In an order filed 17 February 1999, the trial court granted Respondent's motion for summary judgment on the ground "there is no genuine issue as to any material fact and . . . Respondent is en-

titled to a judgment as a matter of law." The record does not contain the trial court's ruling on Respondent's motion to dismiss.[1]

[1] The dispositive issue is whether the record raises a genuine issue of material fact regarding whether Respondent was "liv[ing] in adultery" at the time of Decedent's death.

Letters of Administration which have been issued to the spouse of a decedent may be revoked on the ground the spouse has lost her right to administer the estate pursuant to N.C. Gen. Stat. § 31A-1(a)(2). N.C.G.S. § 28A-9-1(a)(1) (1999); N.C.G.S. § 28A-4-2(7) (1999). A spouse loses her right to administer her spouse's estate under section 31A-1(a)(2) when she "voluntarily separates from the other spouse and lives in adultery and such has not been condoned." N.C.G.S. § 31A-1(a)(2) (1999).

Respondent argues the phrase "lives in adultery" requires a showing the adulterous spouse was residing with the party with whom she was committing adultery.[2] Petitioners argue a single act of adultery can constitute "liv[ing] in adultery."

Because the word "liv[ing]" is ambiguous,[3] we are unable to look to the plain meaning of "liv[ing]" to determine its meaning. *See State v. Bates*, 348 N.C. 29, 34-35, 497 S.E.2d 276, 279 (1998). When language in a statute is ambiguous, this Court may look to the purpose of the statute to ascertain legislative intent. *State v. Tew*, 326 N.C. 732, 738-39, 392 S.E.2d 603, 607 (1990). The purpose of Chapter 31A is

---

1. Although a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the court," N.C.G.S. § 1A-1, Rule 12(b) (1999), the record in this case does not contain any matters outside the parties' pleadings regarding Respondent's motion to dismiss for lack of standing. Respondent's motion to dismiss, therefore, was not treated as a motion for summary judgment and, because the record contains no ruling on the motion, we do not address the issue of whether Petitioners had standing to bring the Petition. *See* N.C.R. App. P. 10(b)(1).

2. Respondent admitted in her affidavit she and Decedent "were living separate and apart at the time of [Decedent's] death," and, therefore, we do not address this issue.

3. A term is ambiguous if it has more than one meaning, and a layman would be unable to determine which meaning is intended. 73 Am. Jur. 2d *Statutes*, § 195, at 392 (1974). Because the term "live" may be defined as "reside; dwell," or may be defined as "conduct[ing] one's life in a particular manner," *The American Heritage College Dictionary* 793 (3rd ed. 1993), and a layman would be unable to determine which definition was intended by the legislature, the term is ambiguous.

to prevent a person from "profit[ing] by his own wrong," and the legislature has stated Chapter 31 "shall be construed broadly" in order to achieve that purpose. N.C.G.S. § 31A-15 (1999). The broadest construction of section 31A-1(a)(2), the construction requiring the least showing to disqualify a spouse, would disqualify a spouse upon a showing of a single act of adultery. We reject this construction based on our legislature's previous distinction between "committing adultery" and "liv[ing] in adultery." *See Pendergast v. Pendergast*, 146 N.C. 225, 226, 59 S.E. 692, 692 (1907) (causes for absolute divorce include: " '(1) If either party shall separate from the other and live in adultery' "; and " '(2) If the wife shall commit adultery' ") (quoting N.C.G.S. § 1285 (1883)); *Setzer v. Setzer*, 128 N.C. 170, 172, 38 S.E. 731, 732 (1901) (statute requires a showing husband was " 'liv[ing] in adultery,' " and showing of "adultery *alone*" is insufficient) (quoting N.C.G.S. § 1285 (1883)). "Committ[ing] adultery" can consist of a single act of adultery. Robert E. Lee, 1 *North Carolina Family Law* § 65, at 319 (4th ed. 1979). It thus follows that "liv[ing] in adultery" requires a showing of something more than "committ[ing] adultery," or a single act of adultery.

We also reject Respondent's argument that "liv[ing] in adultery" should be limited to those "residing" in adultery. This construction is not consistent with the stated legislative directive that the statute be construed "broadly."[4] This is so because such a construction would permit spouses to engage in habitual adultery with those with whom they do not reside and nevertheless be qualified to administer their decedent spouse's estate under section 28A-6-1.

Considering the legislative history and the purpose of section 31A-1(a)(2), we construe "liv[ing] in adultery" to mean a spouse engages in repeated acts of adultery within a reasonable period of time preceding the death of her spouse.[5] Whether the evidence estab-

---

4. Respondent cites *In re Estate of Trogdon*, 330 N.C. 143, 409 S.E.2d 897 (1991), for the proposition section 31A-1(a)(2) requires a showing a spouse is residing with the person with whom she has committed adultery. In *Trogdon*, however, the only issue before the court was whether the spouse was having an adulterous relationship with the person with whom she was residing and, although the parties in *Trogdon* were residing together, the *Trogdon* court did not hold section 31A-1(a)(2) *requires* a showing the parties were residing together. *Trogdon*, 330 N.C. at 144, 152, 409 S.E.2d at 898, 902-03.

5. We note our holding in this case is consistent with the case law of other states which have decided this issue. *See, e.g. Goodwin v. Owen, et. al*, 55 Ind. 243, 255 (1876) ("[l]iving in adultery means living in the practice of adultery"); *see also Goss, &C v. Froman, &C*, 89 Ky. 318, 329, 12 S.W. 387, 390 (1889) (statute requiring spouse "live[]

**IN RE ESTATE OF MONTGOMERY**

[137 N.C. App. 564 (2000)]

lishes a spouse is "liv[ing] in adultery" is a question of fact to be determined by the trier of fact. *See Woodard v. Mordecai*, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951) (determination is finding of fact if it requires "logical reasoning from the evidentiary facts").

**[2]** In this case, the trial court correctly entered summary judgment for Respondent because the evidence, considered in the light most favorable to Petitioners, does not reveal a genuine issue of material fact with respect to whether Respondent was "liv[ing] in adultery." *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971) (genuine issue of material fact is "one which can be maintained by substantial evidence"); *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990) ("[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). At best the evidence merely shows that some four months prior to Decedent's death, Respondent kissed a man in a bar, kissed that same man in a house and lay "all over" him while she was on a couch with other people around, and talked with him several times on the telephone. Indeed, the evidence fails to raise a genuine issue of material fact regarding whether Respondent committed *any* acts of adultery. *See In re Estate of Trogdon*, 330 N.C. 143, 148, 409 S.E.2d 897, 900 (1991) (adultery can be shown by circumstantial evidence of opportunity and inclination to commit adultery).

Affirmed.

Judges WALKER and TIMMONS-GOODSON concur.

---

in adultery" "does not mean that [spouse] shall constantly live with one man in adultery . . . [,] but if she admits any man or men to her periodically . . . such conduct constitutes . . . living in adultery within the meaning of the statute").