MARY CANNON MORRIS, AND JOSEPH E. MORRIS, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF THE E.A. MORRIS CHARITABLE FOUNDATION, PLAINTIFFS v. JOHN S. THOMAS, KATHARINE A. THOMAS, K. BARRY MORGAN, AND DOROTHY S. SHAW, DEFENDANTS AND THE E.A. MORRIS CHARITABLE FOUNDATION, NOMINAL DEFENDANT, INTERVENOR AND INTERESTED PARTY DEFENDANTS

No. COA03-237

(Filed 16 December 2003)

**Corporations— nonprofit—standing to file derivative action— former directors**

> The trial court correctly determined that plaintiffs lacked standing to bring a derivative action against a charitable foundation because they were not directors when the suit was filed. N.C.G.S. § 55A-7-40(a).

Appeal by plaintiffs from order entered 4 November 2002 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 17 November 2003.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Mack Sperling, Charles E. Coble and Hubert Humphrey, for plaintiff-appellants.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by George W. Dennis, III and Jacob H. Wellman, for defendant-appellees John S. Thomas, Katharine Thomas, K. Barry Morgan, and Dorothy S. Shaw.*

*Robinson, Bradshaw & Hinson, P.A., by Robert W. Fuller and Thomas P. Holderness, for defendant-appellee The E.A. Morris Charitable Foundation.*

LEVINSON, Judge.

Plaintiffs appeal from the entry of summary judgment in favor of defendants. For the reasons that follow, we affirm. The relevant facts are summarized as follows: In 1980 the E.A. Morris Charitable Foundation ("the Foundation") was created by Mr. E.A. Morris, for the purpose of supporting "charitable, religious, educational and scientific" enterprises. Plaintiffs (Mary Morris and Joseph Morris) are E.A. Morris's wife and son. The Foundation was established with no members and with a five-member board of directors.

The initial board of directors consisted of E.A. Morris, his wife Mary Morris, his son Joseph Morris, his daughter Mary Lou Morris, and defendant John Thomas (Thomas), who is not a member of the Morris family. When Mary Lou Morris died in 1994, she was replaced on the board by defendant Barry Morgan, an accountant who had worked for the Foundation and who is not related to the Morris family. In 1998, E.A. Morris died and defendant Dorothy Shaw was elected to the board of directors. In 1999, Thomas's wife, Katharine Thomas, was added to the board of directors with the unanimous consent of all board members, including the plaintiffs. The board of directors then consisted of Mary and Joseph Morris, John and Katharine Thomas, Shaw, and Morgan. At the annual meeting of the Foundation board of directors on 2 November 2001, the board of directors removed Mary Morris by a four to one vote, and replaced her with E. J. Walker, Jr. At the same meeting, the board of directors removed Joseph Morris from the board by a vote of five to one.

On 10 May 2002 plaintiffs filed a complaint against John and Katharine Thomas, Shaw, and Morgan. Plaintiffs asserted that their suit was filed "on their own behalf, and derivatively on behalf of the Foundation[.]" Plaintiffs alleged that their removal from the Foundation's board of directors had been "unlawful" and also alleged wrongdoing by defendants in regards to various other actions taken by the Foundation's board of directors. Plaintiffs asserted that

defendants had engaged in a "conspiracy"; that Thomas had used the Foundation for his "personal enhancement and benefit"; and that defendants had breached their fiduciary duty to the Foundation. They sought reinstatement as members of the board of directors, removal of defendants from the board, and other relief. On 26 June 2002 plaintiffs filed an amended complaint adding the Foundation as a "nominal party whose interests are aligned with the Plaintiffs' side of this action" and reiterating that their action was brought "in part on behalf of the E.A. Morris Charitable Foundation."

On 12 July 2002 defendants filed an answer and motion to dismiss, asserting that, pursuant to N.C.G.S. § Chapter 55A, plaintiffs lacked standing to bring either a derivative action on behalf of the Foundation or individual claims on their own behalf. On 16 July 2002 the Foundation filed an answer stating that it was investigating the allegations of the complaint, and requesting a stay of proceedings until their investigation was complete. The Foundation also sought dismissal of plaintiffs' complaint for lack of standing to bring a derivative action and for failure to state a claim for relief. The Foundation submitted affidavits, the Foundation's articles of incorporation and bylaws, the amended bylaws, the minutes of board meetings, and other documents pertinent to plaintiffs' allegations. On 22 July 2002 the Foundation filed an alternate motion to intervene, alleging that the Foundation was a necessary party and that plaintiffs had not properly added the Foundation to the action. The Foundation also filed an amended answer on 22 July 2002, seeking dismissal on the grounds that plaintiffs (1) lacked standing to bring a derivative action, and (2) had not stated "any individual claims cognizable under North Carolina law." Plaintiffs filed a motion on 23 July 2002 opposing the Foundation's "active, non-neutral participation" in the case, and seeking a protective order barring the Foundation from active participation in the action. On 27 August 2002 the trial court entered an order directing, *inter alia*, that:

1. The Foundation's motion to intervene was granted.

2. The plaintiffs' motion for a preliminary injunction was denied.

3. Plaintiffs objection to the Foundation's participation was overruled, and their request for a protective order was denied.

4. The defendants' motions to dismiss were denied "without prejudice to summary judgment motions at the appropriate time."

5. The Foundation's motion for a stay was granted.

On 18 October 2002 the Foundation moved for summary judgment, attaching affidavits, documents, and the Foundation's committee report summarizing the investigation into plaintiffs' allegations. The report concluded that plaintiffs' claims had no merit and that the best interests of the Foundation would be served by dismissal of the lawsuit. On 22 October 2002 plaintiffs filed an objection to the report and moved the court to reconsider their motion to bar the Foundation from "active non-neutral" participation in the lawsuit. The individual defendants also filed a motion for summary judgment.

On 28 October 2002 a hearing was conducted on the defendants' and the Foundation's motions for summary judgment. The trial court ruled from the bench that the issue of standing was dispositive of the summary judgment motions, and that defendants' motions for summary judgment should be granted. An order was entered on 4 November 2002 granting summary judgment for defendants and ruling that the Foundation's summary judgment motion was mooted by the granting of summary judgment in favor of defendants. The order denied plaintiffs' motion for reconsideration of the Foundation's participation and their objection to the Foundation's committee report. From this order, plaintiffs appeal.

## Standard of Review

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2003). Summary judgment is proper if the plaintiff lacks standing to bring suit. *See Northeast Concerned Citizens, Inc. v. City of Hickory*, 143 N.C. App. 272, 545 S.E.2d 768, *disc. review denied*, 353 N.C. 526, 549 S.E.2d 220 (2001).

Plaintiffs' complaint asserted that their action was brought derivatively on behalf of the Foundation, as well as individually on their own behalf. However, plaintiffs did not assign error to the trial court's order of summary judgment as pertains to their purported individual claims. N.C.R. App. P. 10(a) of the Rules of Appellate Procedure provides, in pertinent part, that "except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." Moreover, plaintiffs do not present any arguments on appeal regarding their alleged individual claims against defendants. Questions not presented and discussed in a party's brief are

deemed abandoned. N.C.R. App. P. 28(a). We conclude that plaintiffs have abandoned and failed to preserve for appellate review any issues pertaining to their individual claims against defendants. Accordingly, we consider plaintiffs' arguments only as regards their derivative claims.

## Plaintiffs' Standing to Bring a Derivative Action

In the instant case, the trial court ruled that plaintiffs lacked standing to pursue derivative claims on behalf of the Foundation. The trial court ruled correctly in this regard.

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *American Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002), *disc. review denied*, 357 N.C. 61, 579 S.E.2d 283 (2003) (citation omitted). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001), *disc. review denied*, 356 N.C. 161, 568 S.E.2d 191 (2002) (citation omitted). "Additionally, plaintiffs have the burden of proving that standing exists." *Tolson*, 155 N.C. App. at 627, 574 S.E.2d at 57.

The issue herein is whether plaintiffs had standing to bring a derivative action against defendants. "A 'derivative proceeding' is a civil action brought . . .'in the right of' a corporation, . . . while an individual action is . . . [brought] to enforce a right which belongs to [plaintiff] personally." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000). *See Stewart v. Kopp*, 118 N.C. App. 161, 454 S.E.2d 672 (1995) (derivative action against homeowners' association not properly brought where plaintiff does not allege injury to the association or seek to recover on its behalf).

The E.A. Morris Charitable Foundation is a non profit corporation, and thus is governed by the North Carolina Nonprofit Corporation Act. N.C.G.S. § 55A-1-01 (2003). Standing to bring a derivative suit against a non profit corporation is addressed in N.C.G.S. § 55A-7-40(a) (2003), which provides in relevant part:

An action may be brought in a superior court of this State, . . . in the right of any domestic or foreign corporation by any member or director, provided that, in the case of an action by a

member, . . . it shall appear, that each plaintiff-member was a member at the time of the transaction of which he complains.

Plaintiffs assert that the statutory authority granted to "any member or director" to bring a derivative suit necessarily includes former members of the board of directors. However, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *McKinney v. Richitelli*, 357 N.C. 483, 487, 586 S.E.2d 258, 262 (2003) (citing *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 232 S.E.2d 184 (1977)). "A term is ambiguous if it has more than one meaning, and a layman would be unable to determine which meaning is intended." *In re Estate of Montgomery*, 137 N.C. App. 564, 567 n3, 528 S.E.2d 618, 620 n3 (2000) (citation omitted). We discern no term or phrase in G.S. § 55A-7-40(a) whose meaning is unclear. Though it would have been very easy to do so, the legislature did not include language allowing former directors to file a derivative action.

Further, if we accepted plaintiffs' argument, that the phrase "any member or director" should be interpreted to include <u>former</u> directors, we would then need to determine whether this meant <u>all</u> former directors, even those who last served on the board of directors ten years previously, or whether some other restrictions were appropriate. The question of how recently one would have to have served on a board of directors has no obvious answer. It is readily apparent that the answer cannot be merely that the director must have been on the board "at the time of the transaction of which he complains" because the statute expressly applies that restriction only to members. Nor does the statute provide any guidance on *which* former directors might be authorized to bring suit.

We conclude that the statute plainly restricts standing to bring a derivative action to the members and directors of a nonprofit corporation. Thus, "by statute, 'only members, directors, or the Attorney General have standing to challenge ultra vires acts of a not-for-profit corporation.' " *Blue Cross & Blue Shield of Mo. v. Nixon*, 81 S.W.3d 546, 552 (Mo. App. W.D. 2002) (quoting *Champ v. Poelker*, 755 S.W.2d 383, 389 (Mo. App. E.D. 1988)).

It is conceded by the parties herein that the Foundation had no members. Therefore, the statutory provisions governing a member's standing to bring a suit are of no relevance. It is also uncontroverted that plaintiffs were not on the Foundation's board of directors when

they filed their complaint; indeed, the complaint alleges that their removal was "unlawful". We conclude that, inasmuch as plaintiffs were not directors when their complaint was filed, they lacked standing to bring a derivative action.

Plaintiffs argue that this result would permit a renegade board of directors to expel board members who challenge unlawful or unethical actions, thereby placing the corporation beyond the reach of a derivative action by the former directors. However, we note that the Attorney General has authority to bring an action to restrain a non-profit corporation from taking *ultra vires* or otherwise unlawful actions. *See* N.C.G.S. §§ 55A-3-04; 55A-3-05; 55A-14-30 (2003). Moreover, even assuming, *arguendo*, that the standing requirements of G.S. § 55A-7-40(a) place plaintiffs in a difficult position, it is not the prerogative of this Court to change the law. "[W]hen public policy requires a change in a constitutionally valid statute, it is the duty of the Legislature and not the courts to make that change." *State v. Camp*, 286 N.C. 148, 153, 209 S.E.2d 754, 757 (1974) (citation omitted).

We conclude the trial court properly determined the plaintiffs lack standing to bring a derivative action, and that the court did not err by granting summary judgment for defendants. "Because Defendants were entitled to summary judgment on the ground Plaintiff lacked standing, we need not address Plaintiff's additional assignments of error." *Northeast Concerned Citizens*, 143 N.C. App. at 278, 545 S.E.2d at 772. Accordingly, the trial court's order is

Affirmed.

Chief Judge EAGLES and Judge McGEE concur.