Burden v. Dunson, 2016 NCBC 33.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                         SUPERIOR COURT DIVISION
COUNTY OF WAYNE                           14 CVS 59
                                         ("DGAF Action")

| | |
|---|---|
| DILLARD/GOLDSBORO ALUMNI AND FRIENDS, INC., | ) ) |
|         Plaintiff | ) |
| | ) |
|         v. | ) |
| | ) |
| RAYMOND E. SMITH, JR. and NATHANIEL MOORE, | ) ) |
|         Defendants | ) |

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION
COUNTY OF WAYNE                           14 CVS 340
                                         ("Burden Action")

| | |
|---|---|
| PATRICIA BURDEN, WINSTON BARNES and MINERVA WOODARD, Directors for and on Behalf of The Dillard/Goldsboro Alumni and Friends Association, Inc., | ) ) ) ) |
|         Plaintiffs | ) |
| | ) |
|         v. | ) |
| | ) |
| SEDRICK DUNSON, JOHN HICKS, The Dillard/Goldsboro Alumni and Friends Association, Inc, as a Nominal Defendant, | ) ) ) |
|         Defendants | ) |

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT IN THE BURDEN ACTION

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants Sedrick Dunson, John Hicks, and the

Dillard/Goldsboro Alumni and Friends Association, Inc.'s ("Defendants") Motion for

Summary Judgment in the Burden Action ("Burden Action Motion").[1]

THE COURT, after considering the Burden Action Motion, briefs in support of and in

opposition to the Burden Action Motion, the record evidence filed by the parties,[2] and other

appropriate matters of record, CONCLUDES that the Burden Action Motion should be

GRANTED for the reasons stated herein.[3]

> *Haithcock, Barfield, Hulse & Kinsey, PLLC by Glenn A. Barfield, Esq. and M. Bryan King, Esq. for Plaintiffs Patricia Burden, Winston Barnes, and Minerva Woodard.*

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by Rosemary G. Kenyon, Esq. and Jang H. Jo, Esq. for Defendants Sedrick Dunson, John Hicks, and Dillard/Goldsboro Alumni and Friends Association, Inc.*

McGuire, Judge.

A. *Introduction.*

1.      Dillard/Goldsboro Alumni and Friends, Inc. ("DGAF") is a nonprofit

corporation comprised of former students of Dillard High School and Goldsboro High School

which, historically, has provided fellowship among its members and scholarships to students

in the Wayne County, North Carolina area. Recently, however, this organization, its

directors, national officers, and members, have been embroiled in a series of disputes that

has resulted in the filing of four separate civil actions in Wayne County since January 2014,

all of which having been assigned to the undersigned.  This lawsuit ("Burden Action") and

---

[1] The Burden Action was consolidated with the DGAF Action (Wayne 14 CVS 59) for pretrial purposes by Order of this Court dated April 4, 2014.  A separate opinion and order is being issued this same date regarding the summary judgment motion filed in the DGAF Action.

[2] Plaintiffs did not file any affidavits, depositions, or other evidentiary material in response to the Burden Action Motion. Nevertheless, the Burden Action is consolidated with the DGAF Action. Accordingly, the Court will consider the affidavits and evidentiary material filed by Plaintiffs in response to the DGAF Action Motion.

[3] John Hicks resigned from the DGAF Board in October of 2014. Since the only claims against Hicks in the Burden Action are for injunctive relief related solely to his role as a member of the DGAF Board, those claims are now moot.  Accordingly, the Court GRANTS Defendants' motion for summary judgment to the extent it seeks dismissal of claims against Hicks.

the three related lawsuits arise from a governance dispute between rival factions of the DGAF Board of Directors represented on the one hand by Directors Sedrick Dunson and John Hicks ("Dunson/Hicks faction"), and on the other by Raymond E. Smith, Jr. ("Smith")[4] and Directors Patricia Burden, Winston Barnes, and Minerva Woodard ("Smith/Burden faction"). The dispute largely centers on the division of authority between the DGAF Board of Directors and the National President, and a major source of contention is whether the DGAF Board had authority to remove the National President from office. On that point, the Dunson/Hicks faction contends that Smith was properly removed as National President on November 7, 2013, but that he refused to acknowledge his removal. Smith instead undertook a course of conduct intended to obstruct and disrupt the DGAF Board. For its part, the Smith/Burden faction contends that the board members who voted to remove Smith were from chapters that were not properly constituted under DGAF's by-laws.[5] Accordingly, the Smith/Burden faction contends that Smith's removal as National President was invalid. In this lawsuit, Plaintiffs seek a broad variety of injunctive relief relating to this ongoing dispute between two factions of DGAF's Board of Directors.

B. *Factual and Procedural Background.*

2. The factual background of this action, and the underlying dispute between the parties has been set forth in a number of previous Court orders, and that background is incorporated herein by reference. Only that background necessary to provide context to and decide the Burden Action Motion will be discussed below.

3. DGAF is a nonprofit corporation, organized under Chapter 55A of the North Carolina General Statutes. DGAF has six local chapters. The home chapter is in Goldsboro,

---

[4] At times material, Smith held the office of DGAF's National President.
[5] The contention is based on the Smith/Burden factions claims that certain chapters had failed to file with the national office various lists of members and other reports required by the DGAF Constitution.

North Carolina. DGAF also has chapters in Atlanta, New York, New Jersey, Philadelphia, and Washington, D.C. DGAF has adopted a written Constitution and By-Laws ("Constitution and By-Laws") which were last revised and amended in March 1999.

4. The Constitution and By-Laws provide that the DGAF Board of Directors is comprised of the National President of DGAF, the president of each of the six chapters and a "member-at-large" from each chapter, and the National Treasurer, National Scholarship Chairperson, National Financial Secretary, National Recorder, and the Vice Chairman (the National Treasurer, Financial Secretary, Scholarship Chairperson, Recorder and Vice Chairman are collectively referred to as "Officers"). The Constitution and By-Laws provide that the National President and the 12 chapter members of the Board of Directors are "Voting Members" of the Board,[6] and that the other national officers on the Board are "Non-voting Members." The Constitution and By-Laws state that the Board of Directors "is the absolute governing body of the organization."[7]

5. In May 2013, DGAF's members elected Smith as DGAF's National President, and on October 5, 2013, Smith took office. Shortly thereafter, a disagreement arose concerning the appointment of the remaining national officers of DGAF.[8] On October 16, 2013, the DGAF Board appointed Elizabeth Williams as the National Treasurer.[9] The Dunson/Hicks faction contends that Smith refused to cooperate with Williams as National Treasurer. The Smith/Burden faction asserts that Smith tried to work with Williams, but that Williams unreasonably refused to work with Smith.[10]

---

[6] The National President is listed as a Voting Member of the Board of Directors, but is permitted to vote "only to break ties" among the other Voting Members. Const. and By-Laws, Art. IV and V.
[7] Const. and By-Laws, Art. V.
[8] Pursuant to DGAF's Constitution and By-Laws, the National President is elected by the national membership, while all other national officers are appointed by the DGAF Board. *See* Const. and By-Laws, p. 12.
[9] Smith Aff. (Apr. 1, 2014) ¶ 9.
[10] *Id.* at ¶¶ 14, 30-35.

6. On November 7, 2013, the DGAF Board met and voted to remove Smith from the office of National President. Nevertheless, Smith refused to comply with the Board's requests that he step down as National President.[11]

7. On December 24, 2013, the DGAF Board of Directors held a meeting ("December 24 Meeting"). Notice for the December 24 Meeting was sent to the chapter presidents and members-at-large of those chapters.[12] The notice of the December 24 Meeting was not sent to Smith.[13] The notice stated that the purpose of the meeting was to address DGAF Board governance issues, including "approving next steps to complete the transition for the removal from office of the former President . . . and retaining counsel to advise and represent the organization."[14] Nine members of the Board of Directors attended the December 24 Meeting, including eight Voting Members.[15] The eight Voting Members of the DGAF Board who were present voted to authorize Dunson and Hicks to retain counsel to represent the organization.[16]

8. On January 14, 2014, the Dunson/Hicks faction filed the DGAF Action seeking declaratory and injunctive relief related to the DGAF Board's attempts to remove Smith as National President. Plaintiff in the DGAF Action was, and continues to be, represented by Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP ("Smith Anderson").[17] On January 27, 2014, a hearing was held before the Honorable Jack Jenkins on the parties' respective requests for preliminary injunctions and Smith's motion to dismiss. On February

---

[11] The details regarding the November 7, 2013 meeting and Smith's subsequent conduct are set out in Judge Jenkins' February 21, 2014 Order.

[12] Harris Aff. (Feb. 5, 2014) ¶ 4, Ex. A.

[13] *Id.*

[14] *Id.* at ¶ 6, Ex. A.

[15] *Id.* at ¶ 8, Ex. B.

[16] *Id.* at ¶ 9, Ex. B.

[17] The circumstances surrounding the retention of Smith Anderson are more fully discussed in the Court's Order on Motion to Strike Appearance, entered on March 17, 2015.

21, 2014, Judge Jenkins issued a preliminary order concluding that the DGAF Board's removal of Smith on November 7, 2013, was invalid because a quorum of the Board was not present at the time the vote was taken, and that Smith remained DGAF's National President.

9. Defendants noticed a Board of Directors meeting for March 5, 2014, for the purpose of discussing and taking action regarding the DGAF Action, including ratifying Dunson and Hicks' retention of counsel and their filing the DGAF Action, and other matters ("March 5 Meeting").[18] Smith presided over the March 5 Meeting. Smith requested that each DGAF Board member provide documentation of his or her proper election by their chapter, and that any votes taken be conditioned on verification of proper election of the directors.[19] Dunson and members from other chapters refused to provide the documentation.[20]

10. During the March 5 Meeting, Dunson and other Board members moved that Defendants' actions in retaining the Smith Anderson law firm and filing the DGAF Action be ratified by the Board of Directors.[21] Smith demanded that Defendants provide the Board with copies of the retainer agreements with Smith Anderson, but the agreements were not produced at the March 5 Meeting. Smith refused to permit a vote on the motion.[22] Order could not be kept and the meeting was adjourned.[23]

11. Following the March 5 Meeting, several members of the DGAF Board attempted to call a special meeting of the board for March 12, 2014. The sole purpose of this meeting was to "consider a motion to remove Raymond Smith as National President."[24]

---

[18] Smith Aff. (Apr. 1, 2014) ¶ 37; Dunson Aff. (Apr. 2, 2014) ¶ 20, Ex. M.
[19] Dunson Aff. (Apr. 2, 2014) ¶ 20, Ex. M.
[20] Smith Aff. (Apr. 1, 2014) ¶ 40.
[21] *Id.* at ¶ 42.
[22] *Id.* at ¶ ¶ 43, 46, 53.
[23] *Id.* at ¶ 54.
[24] Dunson Aff. (Apr. 2, 2014), Ex. P.

However, before this meeting could be held, Plaintiffs filed their Complaint in the Burden Action, and obtained a temporary restraining order enjoining the meeting set for March 12.[25]

12.     On March 11, 2014, Patricia Burden, Winston Barnes, and Minerva Woodard ("Plaintiffs") filed their Complaint for Injunctive Relief ("Complaint"). Plaintiffs filed the action derivatively on behalf of DGAF.[26]  The Complaint does not set out specific legal claims against Defendants, but instead seeks  injunctive relief: prohibiting Defendants and "certain person . . . from acting as directors of DGAF without having been duly elected;" prohibiting "the corporation" from ratifying Defendants retention of Smith Anderson and filing the DGAF Action; prohibiting Defendants from "attempts to usurp the authority of the National President and to conduct and control meetings of the DGAF Board;" prohibiting Dunson from "frustrating the deliberative process by loud, abusive, and disruptive behavior;" and, "enforcing Plaintiffs' rights of inspection of the books and records of the corporation."[27]

13.     On March 15, 2014, the Board of Directors held a meeting ("March 15 Meeting").[28]  The undisputed facts establish that seven of the thirteen Voting Members boycotted the meeting.[29]  Seven members of the Board of Directors were present at the commencement of the March 15 Meeting including six Voting Members.[30]  The president of the New York chapter appointed a stand-in member from the New York chapter for purposes of conducting business at the March 15 Meeting pursuant to Article V of the Constitution and By-Laws, and the Board subsequently voted to suspend the Atlanta, New Jersey, and

---

[25] As noted in the Court's April 8, 2014 Order on Preliminary Injunction and Briefing Schedule, this temporary restraining order expired on April 3, 2014.

[26] As explained further below and in the Order issued in the DGAF Action (14 CVS 59), the parties dispute just who has the authority to file lawsuits on behalf of DGAF. In the DGAF Action, the Defendants in this lawsuit brought suit directly on behalf of DGAF.

[27] Compl. pp. 1-2.

[28] The March 15 Meeting is discussed in greater detail in the Court's Opinion and Order on the DGAF Action Motion (¶¶ 37-40).

[29] Smith Aff. (Nov. 12, 2014), Ex. A.

[30] *Id.*

Philadelphia chapters for failure to comply with certain requirements of the Constitution and By-Laws.[31] The Court has concluded that a jury will have to determine whether the three chapters were properly suspended in the March 15 Meeting.[32]

14. On May 14, 2014, Defendants filed their Answer.

15. On August 14, 2015, Defendants filed the Burden Action Motion, seeking summary judgment in Defendants' favor on all relief sought by Plaintiffs in the Complaint. The Burden Action Motion has been fully briefed and is ripe for determination.[33]

C. *Discussion.*

16. The standard for granting a motion for summary judgment is well established in this State. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting Rule 56(c)). Under this standard, the moving party bears "the burden of clearly establishing lack of a triable issue" to the trial court. *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (quoting *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976)). The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Variety Wholesalers, Inc.,* 365 N.C. at 523, 723 S.E.2d at 747 (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

---

[31] *Id.*
[32] Opinion and Order on DGAF Action Motion (April 27, 2016) ¶ 48.

17.    In the Burden Action Motion, Defendants seek summary judgment as to the injunctive relief sought by Plaintiffs on the grounds that Plaintiffs lack standing to pursue derivative claims on behalf of DGAF because they failed to make a pre-suit demand on the DGAF Board.   Alternatively, Defendants contend that the relief sought by Plaintiffs in their Complaint has been rendered moot by previous action of this Court or other intervening events.   In their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs respond only that they made a pre-suit demand for the engagement letter and other information regarding Defendants retention of Smith Anderson, and that their demand for information about the engagement is not moot because "Defendants continue to withhold material information as to the cost and expense of such counsel."[34] Plaintiffs make no specific argument regarding the other injunctive relief that they seek.

18.    "A 'derivative proceeding' is a civil action brought . . . 'in the right of' a corporation, . . . while an individual action is . . . [brought] to enforce a right which belongs to [plaintiff] personally." *Morris v. Thomas*, 161 N.C. App. 680, 684, 589 S.E.2d 419, 422 (2003) (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000)). The North Carolina Nonprofit Corporation Act (the "Act") includes procedural requirements for initiating a derivative action. Specifically, the Act requires a derivative plaintiff to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." G.S. § 55A-7-40(b).[35]   To satisfy the requirements of bringing a derivative action, a demand must "contain specific requests for action by the Board of Directors," and must "be made with

---

[34] Pls.' Br. Opp. Burden Action Mot., *passim*.
[35] As Defendants note, the Act's current demand requirement is identical to the Business Corporation Act's pre-1995 demand provision. *See* G.S. § 55-7-40 (1994).

sufficient clarity and particularity to permit the corporation . . . to assess its rights and obligations and determine what action is in the best interest of the company." *Greene v. Shoemaker*, 1998 NCBC LEXIS 4, *9-10 (N.C. Super. Ct. Sep. 24, 1998). Not only must the demand be sufficiently clear and specific when made to the corporation, the plain language of the Act requires that the demand, or the reasons for failing to make the demand, be pleaded with particularity. G.S. § 55A-7-40(b).

19.     In order to determine whether Plaintiffs have sufficiently alleged, or produced evidence of, a proper demand, the Court first must determine "the action the plaintiff[s] desire[ ]," and then whether plaintiff made specific and particularized requests for such action to DGAF's "directors or other authority." G.S. § 55A-7-40(b). "In determining whether the demand requirement has been met, the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit." *Greene*, 1998 NCBC LEXIS 4, at **9.  Accordingly, the Court must compare each of the types of declaratory relief sought by Plaintiffs in the Complaint with the allegations and evidence regarding the requests Plaintiffs made to the Board of Directors for actions.

20.     The Court must also consider Defendants' contention that certain of the relief requested by Plaintiffs is now moot.  "[T]he exclusion of moot questions from determination is not based on a lack of jurisdiction but rather represents a form of judicial restraint." *In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978).  "Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *Id.* (citations omitted). "Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course

of the proceedings, the usual response should be to dismiss the action." *Id.* (citations omitted). "A case is considered moot when 'a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.'" *Lange v. Lange*, 357 N.C. 645, 647, 588 S.E.2d 877, 879 (2003) (quoting *Roberts v. Madison Cty. Realtors Ass'n*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996)).

21.     Each of Defendants' arguments for summary judgment must be applied separately to the facts surrounding each of Plaintiff's requests for relief.  Accordingly, the Court will consider individually each of Plaintiffs' individual claims for injunctive relief.

        a.   Injunction prohibiting Defendants and "certain persons . . . from acting as directors of DGAF without having been duly elected as such."

22.     The Court interprets Plaintiffs' request as one for an injunction prohibiting Dunson, Hicks, and the members of the Board of Directors from the New Jersey and Philadelphia chapters from acting as DGAF directors solely on the grounds that they have not provided the Board with documentation that they were elected, either as chapter president or as member-at-large, by their respective chapters.  The Court concludes that Plaintiffs have sufficiently alleged in the Complaint that a demand was made to the Board of Directors to require the members of the Board to provide documentation of their respective elections.[36]  In addition, record evidence establishes that requests for such documentation were made on several occasions, both at meetings of the DGAF Board and otherwise.  The Court concludes that, at a minimum, the evidence is sufficient to create a question of fact as to whether a pre-suit demand that the DGAF Board members from the Atlanta, New Jersey, and Philadelphia chapters provide the Board with documentation of their elections by their respective chapters.  Accordingly, summary judgment cannot be granted to Defendants on

---

[36] Compl. ¶¶ 17-19, 40.

the grounds that the undisputed evidence establishes that Plaintiffs did not make a sufficient pre-suit demand to support a derivative action.

23. The Court further concludes that the undisputed facts establish that Sedrick Dunson provided documentation of his election as president of the Atlanta chapter in or around late March 2014.[37] Accordingly, Defendants' motion for summary judgment regarding the request that Sedrick Dunson be prohibited from acting as a director of DGAF "without having been duly elected" should be GRANTED, and that request for relief should be dismissed with prejudice.

24. The evidence, however, establishes that the facts ae in dispute regarding whether DGAF Board members from the New Jersey and Philadelphia chapters have provided documentation of their elections by their respective chapters. Accordingly, Defendants' motion for summary judgment regarding Plaintiffs' requested injunctive relief as it relates to the members of those chapters should be DENIED.[38]

b. <u>Injunction prohibiting the corporation from ratifying Defendants retention of Smith Anderson and filing the DGAF Action.</u>

25. The Court has previously concluded that the DGAF Board of Directors approved the retention the Smith Anderson firm to represent DGAF in the DGAF Action during the December 24 Meeting, that no further ratification of the retention by the Board of Directors was required, and that the Smith Anderson firm did not have a conflict of interest that prevented them from representing DGAF.[39] The Court concludes that the request for an

---

[37] Dunson Aff. (Apr. 2, 2014) ¶¶ 2, 23, Ex. A.
[38] The Court notes that, as discussed in the Opinion and Order regarding the DGAF Action Motion issued today, the question of whether the members of the Board of Directors from the New Jersey and Philadelphia chapters are currently properly serving on the DGAF Board is dependent on whether those chapters were suspended by the Board on March 15, 2014. That issue must be determined by a jury. Opinion and Order on DGAF Motion (April 27, 2016) ¶ 48.
[39] Order on Motion to Strike Appearance (March 17, 2015). In the Order, the Court also noted that Smith Anderson had subsequently provided to the DGAF Board of Directors copies of both of the engagement letters at issue. Plaintiffs do not dispute that the engagement letters were provided.

injunction prohibiting the corporation from ratifying DGAF's retention of Smith Anderson and filing of the DGAF Action is moot. Accordingly, Defendant's motion for summary judgment regarding Plaintiffs' request for an injunction prohibiting the corporation from ratifying the retention of Smith Anderson and the filing of the DGAF Action should be GRANTED, and that request for relief should be dismissed with prejudice.

c. Injunction prohibiting Defendants from "attempts to usurp the authority of the National President and to conduct and control meetings of the DGAF Board."

26. In the Opinion and Order on the DGAF Motion, the Court concluded that the DGAF Board of Directors properly removed Smith as National President at the Board meeting held November 7, 2013.[40] Accordingly, the requests that Defendants be enjoined from "attempts to usurp" Smith's authority as National President and from conducting and controlling meetings of the DGAF Board of Directors are now moot. Accordingly, Defendant's motion for summary judgment regarding Plaintiffs' request for an injunction prohibiting Defendants from "attempts to usurp the authority of the National President and to conduct and control meetings of the DGAF Board" should be GRANTED, and that request for relief should be dismissed with prejudice.

d. Injunction prohibiting Dunson from "frustrating the deliberative process by loud, abusive, and disruptive behavior."

27. The Complaint does not allege, and Plaintiffs have provided no evidence, that they made efforts to get the DGAF Board of Directors to take action to control Dunson's conduct during Board meetings or in any other setting in which Plaintiffs were engaged in the "deliberative process." G.S. § 55A-7-40(b). Accordingly, Plaintiffs' derivative claim for an injunction prohibiting Dunson from "frustrating the deliberative process by loud, abusive, and disruptive behavior" fails. Defendants' motion for summary judgment regarding

---

[40] Opinion and Order on DGAF Motion (April 27, 2016) ¶ 28.

Plaintiffs' request for an injunction prohibiting Dunson from "frustrating the deliberative process by loud, abusive, and disruptive behavior" should be GRANTED, and that request for relief should be dismissed with prejudice.

e. Injunction "enforcing Plaintiffs' rights of inspection of the books and records of the corporation."

28.  Plaintiffs have not alleged what "books and records of the corporation" they wish to inspect, nor have they alleged that they made any pre-suit efforts to get the Board of Directors to provide them access to books and records. There is no evidence in the record that Plaintiffs demanded access to DGAF's books and records or that they were denied access to books and records.[41] Accordingly, Defendants' motion for summary judgment regarding Plaintiffs' request for an injunction "enforcing Plaintiffs' rights of inspection of the books and records of the corporation" should be GRANTED, and that request for relief should be dismissed with prejudice.

THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED, in part, and DENIED, in part, as follows.

29.  As to Plaintiffs' request for an injunction prohibiting Defendants and "certain persons . . . from acting as directors of DGAF without having been duly elected as such," Defendants' Motion for Summary Judgment is DENIED, as it relates to the members of the New Jersey and Philadelphia chapters, and GRANTED, as it relates to Sedrick Dunson.

30.  As to all other relief sought in Plaintiffs' Complaint, Defendants' Motion for Summary Judgment is GRANTED.

---

[41] To the extent that Plaintiffs' request for inspection of books and records was intended to encompass the request that Defendants provide the DGAF Board of Directors with copies of the engagement letters between Defendants and the Smith Anderson firm, it is undisputed that the engagement letters have now been provided and, accordingly, that request for relief is moot.

This the 27th day of April, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases