AP Atl., Inc. v. Crescent Univ. City Venture, LLC, 2017 NCBC 91.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 15 CVS 14745 (Master File) |
| | 16 CVS 14844 (Related Case) |

AP ATLANTIC, INC. d/b/a
ADOLFSON & PETERSON
CONSTRUCTION,

          Plaintiff,

v.

CRESCENT UNIVERSITY CITY
VENTURE, LLC; THE GUARANTEE
COMPANY OF NORTH AMERICA
USA; BB&M ARCHITECTURE,
PLLC; SCA ENGINEERS, INC.;
MADISON CONSTRUCTION
GROUP, INC.; TRUSSWAY
MANUFACTURING, INC.; and T. A.
KAISER HEATING & AIR, INC.,

          Defendants.

v.

SEARS CONTRACT, INC.; MACEDO
CONTRACTING CO.; WHALEYS
DRYWALL, LLC; GRANADA
INTERIORS, INC.; STALLINGS
DRYWALL, LLC; MAYNOR PI, INC.;
MATUTE DRYWALL, INC.;
INTERIOR DISTRIBUTORS, A
DIVISION OF ALLIED BUILDING
PRODUCTS, CORP.; MANUEL
BUILDING CONTRACTORS, LLC;
EAGLES FRAMING COMPANY,
INC.; DIAZ CARPENTRY, INC.;
SOCORRO CASTILLE MONTLE;
AND GUERRERO CONSTRUCTION
PRO, INC.

          Third-Party Defendants.

**ORDER AND OPINION ON
DEFENDANT CRESCENT
UNIVERSITY CITY VENTURE, LLC'S
OBJECTION TO PLAINTIFF'S
THIRD-PARTY COMPLAINT**

MADISON CONSTRUCTION
GROUP, INC.,

          Third-Party Plaintiff,

v.

MANUEL BUILDING
CONTRACTORS, LLC,

Third-Party Defendant.

1. This Matter is before the Court upon Defendant Crescent University City Venture, LLC's ("Crescent") Objection to Plaintiff's Third-Party Complaint (the "Objection") in the above-captioned matter.

2. After considering the Objection, the arguments of counsel for the parties at the September 25, 2017 expedited hearing on the Objection, and the briefs by the parties in support of and in opposition to the Objection, the Court hereby **OVERRULES** the Objection.

> *Swindell & Bond, PLLC, by John D. Bond, III, and Bradley Arant Boult Cummings LLP, by Douglas L. Patin and Avery A. Simmons, for Defendant Crescent University City Venture, LLC.*
>
> *Bell, Davis & Pitt, P.A., by Edward B. Davis, Jason B. James, and Demitra Sourlis, for Defendant BB&M Architecture, PLLC.*
>
> *Johnston, Allison & Hord, P.A., by Greg C. Ahlum, Robert L. Burchette, and Parker Evans Moore, Hall Booth Smith, P.C., by Robert McCune and Alan R. Belcher, Ragsdale Liggett PLLC, by William W. Pollock and Edward E. Coleman, III, and Robinson Elliot & Smith, by William C. Robinson and Dorothy M. Gooding, for Plaintiff AP Atlantic, Inc. d/b/a Adolfson & Peterson Construction.*

Bledsoe, Judge.

I.

FACTUAL & PROCEDURAL BACKGROUND

3. This case began over two years ago, in August 2015. It has proceeded in this Court since its designation as a complex business case in April 2016.

(Designation Order, ECF No. 36.) On October 10, 2016, this case was consolidated with a related action, *Crescent University City Venture, LLC v. Adolfson & Peterson, Inc.*, No. 16 CVS 14844 (Mecklenburg County), and designated as the master case on the Court's docket. For the purposes of resolving the Objection before the Court, the alleged facts and complex procedural history of this litigation can be distilled as follows.

4. The dispute at the center of this litigation concerns the construction of student apartments in Charlotte, North Carolina (the "project" or "construction") by Plaintiff AP Atlantic, Inc. d/b/a Adolfson & Peterson Construction ("AP Atlantic") for Crescent. (*See generally* Compl., ECF No. 1.) AP Atlantic sued Crescent for an alleged breach of contract for outstanding balances, for a suit on bond and to enforce a claim of lien on the property, for priority of AP Atlantic's claim of lien, and for *quantum meruit.* (Compl. 3–6.) AP Atlantic then expanded the suit by amending its Complaint in November 2015 to add claims against several subcontractors. (Am. Compl., ECF No. 6.)

5. On January 29, 2016, Crescent filed an Answer and asserted its own counterclaims against AP Atlantic. (Answer & Countercl., ECF No. 19.) These counterclaims were based on two theories. First, Crescent claimed AP Atlantic had completed the construction late. (Answer & Countercl. 43–48.) Second, Crescent claimed a defect in the project's floor trusses. (Answer & Countercl. 49–57.) Allegedly, following a large gathering of students in one of the apartments, the floor of that apartment, and the ceiling of the unit beneath,

began to sag and crack. (Answer & Countercl. 50.) This lead Crescent to discover that alleged defects and damages to the apartments' floor trusses were "prevalent throughout the buildings." (Answer & Countercl. 52.) Crescent amended its counterclaims again in January 2017. (Answer & Am. Countercl., ECF No. 159.) That amendment added a party that was later dismissed from the case.

6. In the interim, the litigation continued forward. On September 20, 2016, the Court entered a Case Management Order detailing the timeline on which the case was to proceed. (Case Management Order, ECF No. 94.) Under the Case Management Order, the parties had until April 20, 2017 to conduct fact discovery. (Case Management Order 22.) On March 28, 2017, the Court extended this deadline for ninety days. (Order Joint Mot. Modify Case Management Order & Extend Disc. Deadlines 2, ECF No. 183.) In requesting this modification, AP Atlantic and the subcontractor parties represented to the court that the parties had been engaged in "extensive fact discovery . . . including the exchange of written fact discovery, and [were] pursuing discovery diligently." (Joint Mot. Modify Case Management Order & Extend Disc. Deadlines 3, ECF No. 177.) Under the extended deadline, the parties continued with discovery.

7. As part of this continuing discovery, AP Atlantic received responsive information identifying second-tier subcontractors who had worked on the project. AP Atlantic received this information in April and May 2017,

approximately seven to eight months after the Court's entry of the Case Management Order. AP Atlantic took no action at that time to involve the second-tier subcontractors in the case. The Court was not informed that these newly discovered parties existed or that AP Atlantic intended to add them to the litigation as third-party defendants.

8. On June 6, 2017, Crescent and AP Atlantic agreed to settle all claims between the two parties dealing with late completion of the construction and outstanding balances on the construction contract. (Pl.'s Mem. Reply Def.'s Obj. Pl.'s Third-Party Compl. 5, ECF No. 252.) The agreement required Crescent to "modify its counterclaim to remove any claim for liquidated damages[,]" i.e., any claim besides those relating to the defective floor trusses. (Def.'s Br. Supp. Obj. Pl.'s Third-Party Compl. 3, ECF No. 231.) In an effort to comply with this provision, Crescent filed an Amended Answer and Second Amended Counterclaim on June 29, 2017. This pleading did not add any new theories of liability to the case or contain new allegations; it simply removed allegations from Crescent's Answer and Amended Counterclaim that Crescent believed should be deleted due to the settlement agreement. (*See generally* Am. Answer & Second Am. Countercl., ECF No. 212.)

9. Without previously consulting with Crescent or the Court, AP Atlantic filed a Reply to Crescent's Second Amended Counterclaim and a Third-Party Complaint on July 20, 2017. (Pl.'s Mot. Strike, Mot. Dismiss, Reply Def.'s Second Am. Countercl. & Third-Party Compl., hereinafter "Reply

& Third-Party Compl.," ECF No. 219.) The Third-Party Complaint asserted claims against thirteen second-tier subcontractors AP Atlantic contends it discovered in April and May. (*See generally* Reply & Third-Party Compl.) Crescent filed its Objection in response to this maneuver.

10. Defendant BB&M Architecture, PLLC ("BB&M") joined in Crescent's Objection. BB&M adopts Crescent's Objection, statements, and arguments as its own. (BB&M Architecture Notice Joining Def.'s Obj. Pl.'s Third-Party Compl. 1–2, ECF No. 266.) The Court will therefore address the arguments of both parties by reference to Crescent's arguments.

11. Crescent argues that AP Atlantic's Third-Party Complaint is improper because AP Atlantic was required to seek leave from the Court before filing, citing Rules 14, 15, and 21 of the North Carolina Rules of Civil Procedure ("Rule(s)"). (Def.'s Br. Supp. Obj. Pl.'s Third-Party Compl. 4.) AP Atlantic counters by asserting that Rule 14 clearly allows for AP Atlantic's conduct. (Pl.'s Mem. Reply Def.'s Obj. Pl.'s Third-Party Compl. 6.)

II.

ANALYSIS

12. The issue before the Court is clearly one centered on Rule 14. While Crescent's argument that principles expressed in Rules 15 and 21 are analogous to considerations of fairness and prejudice that should apply in this case is well taken, the question presented by the Objection is about the timeliness of third-party practice. Rule 15 deals with the amendment of

pleadings. N.C. R. Civ. P. 15. Here, the action to which Crescent objects is not the filing of an amended pleading but the filing of a third-party complaint. In the same vein, Rule 21 does not address the specific issue of timeliness in the context of third-party practice. *See* N.C. R. Civ. P. 21. Thus, the question before the Court is whether Rule 14 required AP Atlantic to seek leave of the Court before adding third-party defendants to the case on the heels of Crescent's nonsubstantive amendment to its Counterclaim.

13. Rule 14(b) provides that a plaintiff may "cause a third party to be brought [into an action] under circumstances which under [Rule 14] would entitle a defendant to do so." N.C. R. Civ. P. 14(b). Whether a plaintiff can properly engage in third-party practice thus depends on whether a defendant in his position could do so. On that point, Rule 14 states

> At any time after commencement of the action a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. Leave to make the service need not be obtained if the third-party complaint is filed not later than 45 days after the answer to the complaint is served. Otherwise leave must be obtained on motion upon notice to all parties to the action.

N.C. R. Civ. P. 14(a). Thus, putting the provisions together, a plaintiff does not need to obtain leave to serve a third-party defendant if the plaintiff files a third-party complaint not later than forty-five days after the plaintiff's reply to a counterclaim is served.

14. AP Atlantic argues that this language expressly allows what it has done in this case. Twenty-one days after Crescent filed its Second Amended

Counterclaim, AP Atlantic filed its Reply. Contemporaneously, AP Atlantic also filed its Third-Party Complaint. As such, AP Atlantic asserts, its Third-Party Complaint was served within the forty-five-day limit of Rule 14, and no leave was required.

15. Crescent disputes this interpretation and application of Rule 14. It argues that its Second Amended Counterclaim was nothing more than a housekeeping filing meant to prune the issues proceeding to trial down to those that remained following the settlement agreement. Because the amendment did not change the theory or scope of the case and did not add claims or allegations to Crescent's previous Amended Counterclaim, Crescent asserts AP Atlantic was not required to file a subsequent responsive pleading. Crescent objects to AP Atlantic using a duplicative reply as a means to add new third parties into the case without leave.

16. Where a statute's language is clear and unambiguous, "courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). A term not defined by the statute is interpreted according to its ordinary meaning. *Morris Commc'ns Corp. v. City of Bessemer*, 365 N.C. 152, 157, 712 S.E.2d 868, 872 (2011). "A term is ambiguous if it has more than one meaning, and a layman would be unable to determine which meaning is intended." *Morris v. Thomas*, 161 N.C. App. 680, 685, 589 S.E.2d 419, 422 (2003).

17. In contrast, when "a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess*, 326 N.C. at 209, 388 S.E.2d at 136–37. The primary objective of the courts in such a case is "to ascertain and adhere to the intent of the legislature." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 685, 562 S.E.2d 82, 92 (2002). In attempting to discern this intent, the courts "presume that the legislature acted with full knowledge of prior and existing law and its construction by the courts." *Id.* (citing *Raeford Lumber Co. v. Rockfish Trading Co.*, 163 N.C. 314, 317, 79 S.E. 627, 628–29 (1913)).

18. The plain text of Rule 14 sheds no light on which answer or complaint it refers to, much less on whether an amended complaint or amended counterclaim must change the theory or scope of a case in order to allow a party to serve third-party defendants without leave. The statute provides only that the forty-five-day period in which leave is not required begins with the "answer to the complaint." N.C. R. Civ. P. 14(a). This provides no guidance on how amended pleadings are to be treated under Rule 14. Particularly, it fails to address how to proceed in cases like the present one, where an amended pleading is filed only as a housekeeping matter to weed settled claims out of a case. The North Carolina courts have not spoken to this issue. Rule 7, which identifies the pleadings used in North Carolina courts, does not provide any useful information either. The Court believes this lack of guidance renders the meaning of "answer to the complaint" in Rule 14 ambiguous—it is not clear, when considering the many stages of amendments that pleadings may go

through, what complaint (or counterclaim) Rule 14 refers to, and as such, what answer (or reply) the time limit in Rule 14 begins to run from.

19. A similar conundrum appears to have troubled federal courts in other jurisdictions. Rule 14 of the Federal Rules of Civil Procedure requires a third-party plaintiff to "obtain the court's leave if it files [a] third-party complaint more than 14 days after serving its *original answer*." Fed. R. Civ. P. 14(a)(1) (emphasis added). When confronted with questions regarding the meaning of "original answer," federal courts have reached three different conclusions:

> Three interpretations of "original answer" are possible . . . . Under a "plain language" interpretation, the "original" answer is the one that responds to the "original" complaint. If the complaint is amended, subsequent answers would be designated as the "Answer to the [First, Second, etc.] Amended Complaint" and would not be considered "original."

> Under a more nuanced, functional reading, the "original answer" can be an answer to an amended complaint, so long as the basis for impleader is that which is new, i.e. "original," in the answer to the amended complaint.

> Finally, one court has reasoned that because an amended complaint which stands alone supplants any prior complaints, such an amended complaint becomes the original complaint and therefore the answer to such amended complaint becomes the "original answer" within the meaning of Rule 14(a).

*FTC v. Capital City Mortg. Corp.*, 186 F.R.D. 245, 247 (D.D.C. 1999) (citations omitted). The majority of federal courts confronting the issue appear to have adopted the second, "nuanced" view. *McDougald v. O.A.R.S. Cos.*, 2006 U.S. Dist. LEXIS 22505, at *7 (E.D. Cal. Apr. 17, 2006). Though this majority approach is an attractive solution to the problem before the Court, the Court

believes legislative history and the canons of statutory construction preclude its adoption.

20.     Prior to the 1967 enactment of Rule 14 in North Carolina, no statutes provided an exact procedure for third-party practice.  *See* North Carolina Comments, N.C. Gen. Stat. § 1A-1, Rule 14 (noting the lack of concrete authority pre-Rule 14 governing the basis on which third-party defendants could be brought into an action and the procedure by which third-party practice was accomplished).  In adopting Rule 14, the General Assembly was inspired by Federal Rule of Civil Procedure 14.  *Id.* (referencing Federal Rule of Civil Procedure 14 repeatedly and explaining the ways it provides satisfactory guidance for third-party practice).[1]

21.     Critical to this analysis, however, and unlike with many other rules of civil procedure, the Generally Assembly did not adopt the language of Federal Rule of Civil Procedure 14 in its entirety.  Since 1963, the federal rule has included the phrase "original answer."[2]  North Carolina's rule does not include this language, instead measuring its leave-free period from the service

---

[1] The final sentence of the original comment to Rule 14 is particularly revealing on this point: "It should be noted that federal Rule 14 is of course entirely procedural—it does not, indeed cannot—affect any substantive rights.  Thus, it does not allow impleader unless the substantive right exists under State law.  Accordingly, then, adoption of this rule does not affect any of the North Carolina substantive law of contribution or indemnification."  North Carolina Comments, N.C. Gen. Stat. § 1A-1, Rule 14.

[2] Benjamin Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961-1963 (II)*, 77 Harv. L. Rev. 801, 801 (1964) (noting the addition of Federal Rule of Civil Procedure 14's second sentence, which, for the first time, gave parties the ability to bring in third-party defendants without leave).

of the "answer to the complaint." Because North Carolina's rule was first enacted in 1967, and because the Court must presume the legislature acted with full knowledge of prior and existing law, the Court must presume that the legislature knew of the language in Federal Rule of Civil Procedure 14 and made—and continues to make—a deliberate decision not to use it in North Carolina's rule.[3]

22.    The Court must then determine what legislative intent is showcased by the decision to use the phrase "answer to the complaint" in North Carolina's Rule 14 in place of the federal rule's "original answer." Because both rules' time periods run from the service of an "answer," the logical place to begin this inquiry is determining why the legislature omitted the word "original" from North Carolina's Rule 14.

23.    When analyzing the meaning of disputed terms in a statute, courts of North Carolina may turn to the "standard, nonlegal dictionaries" as a guide.

---

[3] This difference appears to be somewhat unique. Several other states, such as Florida, Georgia, New Jersey, South Carolina, Tennessee, Virginia, and West Virginia, have third-party practice rules similar to the federal rule, with time limits measured from the "original answer" or "original pleading." Fla. R. Civ. P. 1.180; Ga. Code Ann. § 9-11-14; N.J. Ct. R. 4:8-1; S.C. R. Civ. P. 14; Tenn. R. Civ. P. 14.01; Va. Sup. Ct. R. 3:13; W. Va. R. Civ. P. 14. Kansas's third-party practice rule used to include language similar to North Carolina's, *Russell v. Cmty. Hosp. Ass'n*, 428 P.2d 783, 785 (Kan. 1967) ("Leave to make the service need not be obtained if the third-party complaint is filed not later than five (5) days after the answer to the complaint is served." (quoting Kan. Stat. Ann. § 60-214 (1963)), but that language appears to have been amended by the Kansas Supreme Court in 1969. The next time the law was amended by legislative action in 1997, "answer to the complaint" was already replaced by "original answer." H.B. No. 2007, 77th Leg., Reg. Sess. (Kan. 1997). All of this supports the notion that our state legislature intentionally chose to use the language "answer to the complaint" instead of "original answer" in North Carolina's Rule 14.

*C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 152, 388 S.E.2d 557, 568 (1990). The word "original" is an adjective meaning "having to do with an origin; first; earliest" or "never having been before; new; novel[.]" Webster's New World Dictionary of the American Language 526 (1966). Under this definition, the "original answer" would be the first or earliest answer filed in a lawsuit, as no answer would have been filed before it. While the majority of federal courts have not ascribed this meaning to the phrase "original answer," our own legislature's decision to omit "original" compels the conclusion that North Carolina's Rule 14 does not distinguish between the very first answer in a suit and subsequent amended answers. This means the rule also draws no distinction between original complaints and amended complaints. As such, "answer" and "complaint," as used in Rule 14, must include amended pleadings.

24.    Crescent urges the Court to read Rule 14 in a manner nearly identical to the "nuanced" federal interpretation of Federal Rule of Civil Procedure 14 and thereby prevent the late addition of third-party defendants in this case. While a compelling alternative, the Court is not at liberty to adopt this approach. The plain text of North Carolina's Rule 14 provides no sign that the legislature intended "answer to the complaint" to mean "an answer which responds to a complaint asserting new theories of liability or claims." Absent any limiting factor imposed by the legislature, the Court must conclude Rule 14(a) permits a defendant to file a third-party complaint within forty-five days

of service of its answer to a plaintiff's amended complaint, and in such cases the third-party defendant may be served without leave of court. Neither the language of Rule 14 nor case law interpreting it requires the amended complaint to change the need for impleader or allege a new theory of liability. By virtue of Rule 14(b) then, a plaintiff need not obtain leave to serve a third-party defendant when he has served a reply to *any* amended counterclaim and has filed a third-party complaint within the required time period.

25.    Crescent argues that this interpretation of Rule 14 goes against the overall purpose and spirit of the North Carolina Rules of Civil Procedure and will cause Crescent great prejudice due to the delay resulting from the addition of the new parties. While the Court's reading of Rule 14 may have an undesirable effect in some cases—including in this one—and it is true that constructions that defeat the purpose of a statute must be avoided, *In re Peoples*, 296 N.C. 109, 151, 250 S.E.2d 890, 914 (1978), the Court cannot conclude the result it is compelled to reach now defeats the purpose of Rule 14.

26.    The North Carolina Supreme Court has stated "the purpose of Rule 14 is to promote judicial efficiency and the convenience of parties by eliminating circuity of action . . . by combining [all] suits into one action." *Heath v. Board of Comm'rs*, 292 N.C. 369, 376, 233 S.E.2d 889, 893 (1977) (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 1442 (1971)). The rule is meant to avoid "a potentially damaging time lag between a judgment against [a defending party] in one action and a judgment in his

favor against the party ultimately liable in a subsequent action[.]" *Id.* (quoting Wright et al., *supra*). Allowing a defending party great liberty to bring in third-party defendants who are or may be liable to the third-party plaintiff furthers these goals of Rule 14. Indeed, AP Atlantic might suffer from a potentially damaging time lag in this case if it were found liable to Crescent and was forced to seek relief against the third-party defendants in a separate action.

27. Having concluded the above, the Court must permit AP Atlantic's joinder of the third-party defendants in this case to stand under Rule 14. Although Crescent's Second Amended Counterclaim merely withdrew previously brought claims, it was indeed a counterclaim and one to which AP Atlantic properly filed a reply. Because AP Atlantic filed its Third-Party Complaint within forty-five days of filing its Reply to the Second Amended Counterclaim,[4] no leave was required to file the Third-Party Complaint or serve the new third-party defendants. As such, the addition of the third parties was properly made.

28. The Court reaches this conclusion reluctantly. The Court is particularly troubled by the fact AP Atlantic represented to the Court that it had been involved in "extensive fact discovery" as of March 2017 when asking for an extension of discovery deadlines, (Joint Mot. Modify Case Management Order & Extend Disc. Deadlines 3), but now argues that it did not delay in

---

[4] "After an action has been designated as a mandatory complex business case or otherwise assigned to the [Business] Court," electronic filing and the resulting Notice of Filing constitute "adequate service under the Rules of Civil Procedure[.]" BCR 3.9(a).

joining these third-party defendants because "[f]act discovery had barely begun, as of . . . February 2017[,]" (Pl.'s Mem. Reply Def.'s Obj. Pl.'s Third-Party Compl. 3). Had AP Atlantic pursued discovery in a more diligent and proactive fashion, it likely could have added these third parties into the case much earlier and with less disruption to Crescent, the existing parties, and the case calendar. Instead, AP Atlantic opportunistically, but lawfully, seized upon Crescent's perfunctory amendment to expand (and likely, now, delay) the progress of the case in circumstances avoiding the need for judicial leave.

29. At the same time, the Court is mindful of the fact that Crescent could have withdrawn its settled counterclaims by voluntarily dismissing them pursuant to Rule 41—a procedural step that would not have given AP Atlantic the opportunity to file its Third-Party Complaint under Rule 14. Assuming, *arguendo*, that an amendment was required by the language of the settlement agreement—"[Crescent] will modify its counterclaim to remove any claim for liquidated damages"—that requirement was agreed to by Crescent. (*See* Def.'s Br. Supp. Mot. Dismiss Certain Claims & Enforce Settlement Agreement Ex. B, Settlement Agreement 4, ECF No. 229.) In the end, to the extent Crescent contends that AP Atlantic has taken unfair advantage of the other parties to this action through its (and the Court's) interpretation of Rule 14, it is an advantage Crescent allowed through its choices in negotiating and implementing the settlement agreement.

III.

CONCLUSION

30.    For the foregoing reasons, the Court hereby **OVERRULES** the Objection.

**SO ORDERED**, this the 5th day of October, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases